IN THE SUPREME COURT OF IOWA

No. 14–1605

Filed March 18, 2016

IOWA INDIVIDUAL HEALTH BENEFIT REINSURANCE ASSOCIATION,

Appellant,

vs.

STATE UNIVERSITY OF IOWA, IOWA STATE UNIVERSITY OF SCIENCE AND TECHNOLOGY, and UNIVERSITY OF NORTHERN IOWA,

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Dennis J. Stovall, Judge.

Nonprofit reinsurance association seeks further review of a court of appeals decision affirming a district court judgment that association lacked capacity to sue members for unpaid assessments. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT ORDER REVERSED; CASE REMANDED.**

Gregory M. Lederer of Lederer Weston Craig P.L.C., Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Solicitor General, and Diane M. Stahle, Special Assistant Attorney General, for appellees.

**WATERMAN, Justice.**

In this appeal, we must determine whether a nonprofit corporation, the Iowa Individual Health Benefit Reinsurance Association (IIHBRA), has the capacity to sue its members for unpaid assessments it is statutorily obligated to collect and, if so, whether this case is subject to mandatory arbitration under Iowa Code section 679A.19 (2013). The IIHBRA was created under Iowa Code chapter 513C (1997) and incorporated under chapter 504A.[1] Chapter 513C initially included a provision listing among the IIHBRA's powers the authority to "sue or be sued," a power also set forth in chapter 504A. *See* Iowa Code § 513C.10(5)(*b*) (1997); *id.* § 504A.4(2). A 2001 amendment deleted that redundant provision from chapter 513C but left intact the IIHBRA's duty to collect assessments. *See* 2001 Iowa Acts ch. 125, § 5. The IIHBRA sued several alleged members—Iowa's regent universities—for unpaid assessments. The universities moved to dismiss, contending the 2001 amendment revoked the IIHBRA's power to sue. Alternatively, the universities argued the district court lacked subject matter jurisdiction because the IIHBRA is an administrative department, commission, or board of the state government and is therefore required to arbitrate under Iowa Code section 679A.19 (2013). The IIHBRA resisted, arguing it retained the capacity to sue under chapter 504 and is not subject to the arbitration statute. The district court, without deciding the arbitration issue, ruled that the 2001 amendment to chapter 513C revoked the IIHBRA's

---

[1]Chapter 504A, the Iowa Nonprofit Corporation Act, governed nonprofit corporations when the IIHBRA was created. In 2004, the legislature enacted chapter 504, the Revised Iowa Nonprofit Corporation Act, which now governs the IIHBRA's powers as a nonprofit corporation. *See* 2004 Iowa Acts ch. 1049 (codified at Iowa Code ch. 504 (2005)).

capacity to sue and dismissed the action. The court of appeals affirmed. We granted the IIHBRA's application for further review.

For the reasons explained below, we hold the IIHBRA has the capacity to sue its members in district court for unpaid assessments. The 2001 amendment to chapter 513C left intact the IIHBRA's capacity to sue under chapter 504A, and the IIHBRA is not an "administrative department, commission or board of the state government" subject to mandatory arbitration under section 679A.19. Accordingly, we vacate the decision of the court of appeals, reverse the district court's dismissal order, and remand the case for further proceedings.

## I. Background and Procedural History.

This appeal involves two statutes addressing access to health insurance, specifically high-risk policies for individuals with preexisting medical conditions. An overview of this legislation provides context for the issues on appeal. In 1986, the legislature enacted Iowa Code chapter 514E, which created the Iowa Comprehensive Health Insurance Association (ICHIA). *See* 1986 Iowa Acts ch. 1156, § 2 (codified at Iowa Code § 514E.2 (1987)). The ICHIA issues its own individual and group health insurance policies to eligible Iowans. *See* Iowa Code § 514E.2 (2013). The goal of chapter 514E was to provide health insurance to Iowans unable to obtain affordable coverage on the private market. *See id.* The insurance commissioner determined the ICHIA program was underutilized and, in 1994, issued a bulletin reminding private health insurers of their obligation under section 514E.11 to notify applicants of the option to purchase ICHIA policies whenever the insurer rejected the applicant or offered coverage at a higher rate. Therese M. Vaughan, Iowa Ins. Div., *Bulletin No. 94–6 Utilization of Iowa Comprehensive Health Association's Policy Services* (1994), *rescinded by* Nick Gerhart, Iowa Ins.

Div., *Bulletin No. 13-4—Rescission of Insurance Division Bulletins* 4 (2013).

In 1995, the legislature enacted Iowa Code chapter 513C, the Individual Health Insurance Market Reform Act. 1995 Iowa Acts ch. 5, §§ 3–13 (codified at Iowa Code ch. 513C (1997)). The legislature expressed the goal of this Act as follows:

> The purpose and intent of this chapter is to promote the availability of health insurance coverage to individuals regardless of their health status or claims experience, to prevent abusive rating practices, to require disclosure of rating practices to purchasers, to establish rules regarding the renewal of coverage, to establish limitations on the use of preexisting condition exclusions, to assure fair access to health plans, and to improve the overall fairness and efficiency of the individual health insurance market.

Iowa Code § 513C.2 (1997). Section 10 created the IIHBRA, a nonprofit corporation organized under Iowa Code chapter 504A. *Id.* § 513C.10(1). Membership in the IIHBRA is mandatory for health insurance companies selling coverage in Iowa, as well as health maintenance organizations, fraternal societies, and self-insured employers that offer health benefit plans subject to state insurance regulation. *Id.* The members are required to "report the amount of earned premiums and the associated paid losses for all basic and standard plans." *Id.* § 513C.10(7). The IIHBRA uses these reports to determine and collect a yearly assessment from healthcare providers to spread the cost of providing health insurance to Iowans who cannot afford to pay market rates for high-risk policies. *Id.* § 513C.10(10).

In 2001, the legislature amended chapters 513C and 514E to merge the boards of directors of the IIHBRA and the ICHIA and delete from chapter 513C the enumeration of certain powers, including the power to sue. *See id.* § 513C.10(5); 2001 Iowa Acts ch. 125, § 5. The

amendment left intact the IIHBRA's duty to ascertain and collect assessments from its members. *See* Iowa Code § 513C.10(3) (2003). No prohibition on suits was added. Another amendment in 2003 clarified the members' obligation to report data and pay assessments to the IIHBRA. 2003 Iowa Acts ch. 91, § 26 (codified at Iowa Code § 513C.10(6) (2005)).

The IIHBRA filed this civil action on November 1, 2013. The IIHBRA's petition alleges that the State University of Iowa (SUI), Iowa State University of Science and Technology (ISU), and the University of Northern Iowa (UNI) (collectively, the universities) are members required to submit annual reports and pay assessments due under Iowa Code chapter 513C. In 2010, the universities submitted their reports but failed to pay their assessments. The IIHBRA alleges the following assessments are owed for 2010: $508,030 from SUI, $198,852 from ISU, and $78,131 from UNI, plus interest and costs. In 2011, the universities failed to submit reports or pay any assessments. The IIHBRA demands payment of the assessments as well as injunctive relief requiring annual reporting by the universities.

On January 17, 2014, the universities filed a preanswer motion to dismiss the petition. The universities conceded solely for purposes of the motion (and this appeal) that they are members of the IIHBRA, which they otherwise deny. The motion to dismiss asserted two grounds: (1) that the IIHBRA lacks the capacity to sue based on the 2001 amendment to chapter 513C; and (2) that the district court lacks subject matter jurisdiction because the IIHBRA is required to arbitrate this case under Iowa Code section 679A.19, which governs disputes between "administrative departments, commissions, and boards of the state government." The IIHBRA resisted on both grounds. The IIHBRA argued

that its capacity to sue under Iowa Code section 504.302(1) was left intact by the 2001 amendment because the explicit right to sue in chapter 513C was duplicative of its right to sue under chapter 504A. *See* Iowa Code § 504A.4(2) (2013). The IIHBRA also denied that it was a department, commission, or board of state government required to arbitrate with the universities under section 679A.19.

On August 28, the district court, without reaching the arbitration issue, granted the universities' motion to dismiss on the first ground. The district court ruled that the 2001 amendment to chapter 513C "revoke[d] the authority to sue which [the legislature] had previously bestowed upon IIHBRA."

The IIHBRA appealed, and we transferred the case to the court of appeals, which affirmed the dismissal without reaching the arbitration issue. The court of appeals concluded that the 2001 amendment eliminated the IIHBRA's power to sue. We granted the IIHBRA's application for further review.

## II. Standard of Review.

"We review a district court's ruling on a motion to dismiss for the correction of errors at law." *Shumate v. Drake Univ.*, 846 N.W.2d 503, 507 (Iowa 2014) (quoting *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 253 (Iowa 2012)). We accept the petition's well-pleaded factual allegations as true, but not its legal conclusions. *Id.*; *see also Estate of Dyer v. Krug*, 533 N.W.2d 221, 222 (Iowa 1995) (reviewing for correction of errors at law a ruling dismissing petition on grounds that plaintiff lacked the capacity to sue). We review rulings on statutory construction for correction of errors at law. *Schaefer v. Putnam*, 841 N.W.2d 68, 74 (Iowa 2013). Our standard of review of rulings on subject matter jurisdiction is

also for correction of errors at law. *Id.* (noting court's inherent power to determine subject matter jurisdiction).

### III. Analysis.

This appeal presents two questions of statutory interpretation. First, we must decide whether the legislature intended in 2001 to eliminate the IIHBRA's power to sue its members to collect assessments that the organization remained obligated to collect under chapter 513C and its members remained obligated to pay.[2]  We conclude the IIHBRA retained its power to sue under section 504.302 given the lack of any express restriction on its power to sue in chapter 513C.  Second, we must decide whether the IIHBRA is required to arbitrate this dispute under Iowa Code section 679A.19.  We conclude that section 679A.19 is inapplicable based on our legal conclusion that the IIHBRA is not a department, commission, or board of the state government within the meaning of that statute.

We begin our analysis with familiar rules of statutory interpretation.  An entity created by statute is "limited in power to that authority granted by the legislature to it." *Llewellyn v. Iowa State Commerce Comm'n*, 200 N.W.2d 881, 884 (Iowa 1972).  "The goal of statutory construction is to determine legislative intent." *Star Equip., Ltd. v. State*, 843 N.W.2d 446, 455 (Iowa 2014) (quoting *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004)).  "We derive legislative intent not only from the language used but also from the statute's subject matter, the object sought to be accomplished, the purpose to be

---

[2]We do not reach the question whether the universities are members of the IIHBRA, an allegation the universities accepted as true for purposes of the motion to dismiss and this appeal in light of the standard of review.  The parties may litigate that issue on remand.

served, underlying policies, remedies provided, and the consequences of the various interpretations." *Id.* (quoting *Postell v. Am. Family Mut. Ins. Co.*, 823 N.W.2d 35, 49 (Iowa 2012)). "We read related statutes together and attempt to harmonize them." *In re A.M.*, 856 N.W.2d 365, 372 (Iowa 2014).

**A. Capacity to Sue.** The universities' primary assertion is that the IIHBRA has no capacity to sue. "[A] party must have capacity to sue before the party may commence and maintain a cause of action." *Iowa Coal Min. Co. v. Monroe County*, 555 N.W.2d 418, 428 (Iowa 1996). Capacity to sue is

> distinct from, although closely allied to, legal existence, or the quality of being a person in law, and the possession of the requisite interest to support an action, or "standing," to sue. Capacity relates to a party's personal or official right to litigate the issues presented by the pleadings. Want of capacity to sue has reference, not to the existence of a plaintiff, but to legal disability, such as infancy, mental incompetence, and the like, which deprives a party of the right to come into court.

*Id.* (quoting 59 Am. Jur. 2d *Parties* § 24 (1987)).

The fighting issue is the effect of the 2001 amendment to chapter 513C. *See* 2001 Iowa Acts ch. 125. The universities argue the 2001 amendment to chapter 513C stripped the IIHBRA of its capacity to sue by deleting a provision expressly empowering it to sue. The district court and court of appeals agreed. The IIHBRA argues the 2001 amendment merely removed "duplicative language" and left intact its express power to sue in Iowa Code section 504.302. We agree that the 2001 amendment did not eliminate the IIHBRA's capacity to sue.

Because the IIHBRA is a nonprofit corporation created by statute, the Iowa Code must establish the IIHBRA's capacity to sue. *See Llewellyn*, 200 N.W.2d at 884 (holding entities created by statute can

only exercise the powers granted to them by the legislature). We construe the 2001 amendment "mindful of the state of the law" at the time it was enacted and of our duty to "harmonize the statute, if possible, with other statutes on the same subject matter." *Jud. Branch v. Iowa Dist. Ct.*, 800 N.W.2d 569, 576 (Iowa 2011) (quoting *State v. Dann*, 591 N.W.2d 635, 638 (Iowa 1999)). "When an amendment to a statute adds or deletes words, a change in the law will be presumed unless the remaining language amounts to the same thing." *Davis v. State*, 682 N.W.2d 58, 61 (Iowa 2004).

A review of the history of the legislation is instructive. The Act that created the IIHBRA stated that "a nonprofit corporation is established" and "shall be incorporated under chapter 504A." 1995 Iowa Acts ch. 5, § 12 (codified at Iowa Code § 513C.10(1) (1997)). The IIHBRA's duties included collecting reports from members, calculating the amount of earned premiums and associated paid losses for basic and standard insurance plans, and making assessments and distributions according to the statute to equalize the gains and losses reported. *Id.* (codified at Iowa Code § 513C.10(7)–(11)). As a nonprofit corporation, the IIHBRA enjoyed powers under chapter 504A. Iowa Code § 504A.4(2) (1997). Chapter 504A explicitly gave nonprofit corporations the power to sue:

> Each corporation, unless otherwise stated in its articles of incorporation, shall have the power:
>
> . . . .
>
> 2. To sue and be sued, complain and defend, in its corporate name.

*Id.* The enabling legislation that created the IIHBRA nevertheless included a redundant power to sue:

5. The association has the general powers and authority enumerated by this section . . . .  In addition, the association may do any of the following:

. . . .

b. *Sue or be sued*, including taking any legal action necessary or proper for recovery of any assessments for, on behalf of, or against members of the association or other participating persons.

1995 Iowa Acts ch. 5, § 12 (emphasis added) (codified at Iowa Code § 513C.10(5)(*b*) (1997)).  The parties agree the IIHBRA had the authority to sue members to recover assessments and compel reporting under the original enabling legislation.

The parties disagree whether that power was eliminated by the 2001 amendment to chapter 513C.  As part of the 2001 amendment, section 513C.10(5)(*b*), which stated the IIHBRA had the power to sue, was indeed deleted.  2001 Iowa Acts ch. 125, § 5.  The universities, district court, and court of appeals seized on that deletion to conclude the IIHBRA was thereby deprived of its capacity to sue.  But we must construe the 2001 amendment in light of the related statutes and the purpose of chapter 513C.  Significantly, the 2001 amendment left unchanged the IIHBRA's status as a nonprofit corporation under chapter 504A.[3]  We must read these statutes together and harmonize them if possible.  *In re A.M.*, 856 N.W.2d at 372.  Thus, we conclude the IIHBRA retained its power to sue as expressly provided in section 504A.302.

---

[3]The subsection making IIHBRA a nonprofit corporation was nonsubstantively amended in 2001.  *Compare* 1995 Iowa Acts ch 5, § 12 (codified at Iowa Code § 513C.10(4) (1997)) ("A nonprofit corporation is established to be known as the Iowa individual health benefit reinsurance association. . . .   The association shall be incorporated under chapter 504A . . . ."), *with* 2001 Iowa Acts ch. 125, § 4 (codified at Iowa Code § 513C.10(1)(*b*) (2013)) ("The Iowa individual health benefit reinsurance association is established as a nonprofit corporation. . . .   The association shall be incorporated under chapter 504A . . . .").

So what was the purpose of the 2001 amendment? Plainly, to merge the boards of directors of the ICHIA and the IIHBRA for greater efficiency. By its terms, the 2001 amendment provided that the IIHBRA, which previously had its own board of directors,[4] would thereafter "exercise its powers through the [ICHIA's] board of directors established under chapter 514E." 2001 Iowa Acts ch. 125, § 4 (codified at Iowa Code § 513C.10(1)(*b*) (2003)). The ICHIA statute, chapter 514E, was simultaneously amended to state: "The [ICHIA] shall also be responsible for administering the Iowa individual health benefit reinsurance association pursuant to all of the terms and conditions contained in chapter 513C." *Id.* § 7 (codified at Iowa Code § 514E.2(1)). As part of this reorganization, the ICHIA board of directors expanded from eleven members to fourteen. *Compare* Iowa Code § 514E.2(2) (1997) (providing for eleven director positions), *with* Iowa Code § 514E.2(2) (2003) (providing for fourteen director positions). The new director positions added to the ICHIA board mirrored, albeit imperfectly, the director positions eliminated from the IIHBRA statute.[5] This restructuring of the

---

[4]Chapter 513C originally provided for a seven member board of directors of the IIHBRA consisting of four members from the four largest domestic carriers of individual health insurance in the state, and three members from the three largest carriers of health insurance in the state. 1995 Iowa Acts ch. 5, § 12 (codified at Iowa Code § 513C.10(2) (1997)).

[5]*Compare* Iowa Code § 513C.10(2) (1997) (providing for a seven-person board of directors composed of representatives from the four largest domestic carriers of individual health insurance in the state and three members from the three largest carriers of health insurance in the state), *and id.* § 514E.2(2) (enumerating eleven board of director positions without any mandated representatives from health insurance providers), *with* Iowa Code § 514E.2(2) (2003) (listing the members of a fourteen-member board of directors, including two members representing the largest domestic carriers of health insurance in the state and three members representing the three largest carriers of health insurance in the state).

boards of directors made the provisions in section 513C.10 referencing the IIHBRA's board of directors unnecessary, so they were deleted.[6]

The legislative history confirms the purpose of the 2001 amendment was to merge the board of directors of the ICHIA and the IIHBRA. The preamble to the 2001 amendment stated the Act

> relat[ed] to the Iowa individual health benefit reinsurance association and the Iowa comprehensive health insurance association, by changing the board of directors, membership, and assessment related to the associations, and making changes relating to adjustments in the coverage of basic and standard health plans.

2001 Iowa Acts ch. 125. The amendment was accompanied by a bill explanation stating in relevant part,

> The bill deletes subsections of Code section 513C.10 that address the board of directors for the [IIHBRA].
>
> . . . .
>
> The bill amends Code section 514E.2 to provide that the [ICHIA] shall be responsible for administering the [IIHBRA] pursuant to all of the terms and conditions contained in Code chapter 513C. . . .
>
> *The bill also amends Code section 514E.2 regarding the composition of the board of directors of the [IIHBRA], resulting in a merger of the boards of the [ICHIA] and the [IIHBRA].*

H.F. 733, 79th G.A., 1st Sess., explanation (Iowa 2001) (emphasis added); *see Star Equip.*, 843 N.W.2d at 454 & n.3 (noting explanations attached to bills are indications of legislative intent).

---

[6]Each deleted section referenced the IIHBRA's board of directors or its independent plan of operation. *See* Iowa Code § 513C.10(2) (1999) (providing for a seven-member board of directors); *id.* § 513C.10(3) (requiring the association to submit a plan of operation to address board meetings, reimbursement, and selection); *id.* § 513C.10(4) (requiring the association to approve of any delegation of the association's powers and duties under its plan of operation); *id.* § 513C.10(5) (stating the IIHBRA's powers are defined in part by the association's plan of operation); 2001 Iowa Acts ch. 125, § 5 (deleting Iowa Code § 513C.10(2)–(5)).

Notably, the 2001 amendment did not eliminate the IIHBRA's statutory duty to collect reports and assessments from its members. It left untouched chapter 513C's express objective "to promote the availability of health insurance coverage to individuals regardless of their health status or claims experience." Iowa Code § 513C.2) (2003). That legislative objective is accomplished by spreading the cost of high-risk health insurance policies for Iowans. That objective would be undermined if assessments from members go uncollected. By contrast, an interpretation recognizing IIHBRA's capacity to bring suit to enforce the provisions of chapter 513C furthers the objectives of the statute. We interpret statutes and statutory amendments to effectuate, not thwart, the purpose of the legislation. *See Star Equip.*, 843 N.W.2d. at 455 ("We derive legislative intent . . . from the . . . object sought to be accomplished, the purpose to be served, . . . and the consequences of the various interpretations." (quoting *Postell*, 823 N.W.2d at 49)). We do not believe the legislature intended to impose on the IIHBRA the obligation to collect assessments from its members without the power to sue to enforce collection. The 2001 amendment was not intended to render the IIHBRA toothless to enforce its members' obligations.

The universities rely on Iowa Code section 504.301(2), which now provides that nonprofit corporations regulated under another statute are subject to the restrictions in that statute. Section 504.301(2), however, was not in the Iowa Code in 2001. *See* 2004 Iowa Acts ch. 1049, § 24 (codified at Iowa Code § 504.301 (2005)). Its predecessor, chapter 504A, did not contain an equivalent provision limiting the powers of a nonprofit corporation subject to regulation by statute. *See* Iowa Code ch. 504A (2001).

Subsequent amendments to section 513C.10 reinforce our conclusion that the IIHBRA retained its capacity to sue. In 2003, the legislature again amended section 513C.10 to add this section regarding members' obligation to comply with reporting requirements and pay assessments:

> For purposes of calculating and conducting the assessment, the association *shall have the express authority to require members to report on an annual basis* each member's total health insurance premiums and payments for subscriber contracts and paid losses. *A member is liable for its share of the assessment* calculated in accordance with this section regardless of whether it participates in the individual insurance market.

2003 Iowa Acts ch. 91, § 26 (emphasis added) (codified at Iowa Code § 513C.10(6) (2005)). The amendment's preamble described the Act as "relating to insurance, including . . . calculation of assessments by the Iowa individual health benefit reinsurance association, [and] payment of certain insurance fees." 2003 Iowa Acts ch. 91. This amendment expressly authorized the IIHBRA to require its members to file the annual reports and stated its members were liable for any assessment. A person who is "liable" is "bound or obligated according to law or equity." *Liable*, Webster's Third New International Dictionary (unabr. ed. 2002). Again, we do not believe the legislature intended to leave the IIHBRA powerless to enforce its members' obligations.

After this 2003 amendment to chapter 513C, the statute governing nonprofit corporations was changed to state, "A corporation engaging in an activity that is subject to regulation under another statute . . . shall be subject to all limitations of the other statute." 2004 Iowa Acts ch. 1049, § 24 (codified at Iowa Code § 504.301 (2005)). The universities' reliance on section 504.301 is misplaced because there is no provision in chapter 513C as amended that expressly limits the power of the IIHBRA

to sue. We will not construe chapter 513A's silence as a restriction on the unambiguous power to sue provided both before the 2004 amendment in section 504A.4(2) (2003) and after the 2004 amendment in section 504.302(1) (2005). Rather, we read the statutes together and harmonize them to conclude the IIHBRA retained the power to sue following the legislature's amendments.

The universities contended at oral argument that the insurance commissioner has the authority to sue for the IIHBRA, obviating the IIHBRA's need to litigate on its own behalf. However, no provision in chapter 513C grants the insurance commissioner the power to sue members of the IIHBRA. Other statutes expressly grant the insurance commissioner power to file a civil action.[7] If the legislature had intended the insurance commissioner to collect assessments from recalcitrant members of the IIHBRA, it could have said so in chapter 513C. It did not.

We recognize the insurance commissioner has broad powers to enforce the insurance laws of this state. *See* Iowa Code § 505.8(1) (2013) ("The commissioner of insurance shall . . . enforce all the laws of the state relating to federal and state insurance business transacted in the state."). We need not decide whether the insurance commissioner could sue members of the IIHBRA to collect unpaid assessments. In either

---

[7]See*, e.g.*, Iowa Code § 507C.16 (2013) (permitting the commissioner to petition the district court for an order of liquidation); *id.* § 507C.17 (authorizing the commissioner to petition the district court for an order directing the commissioner to liquidate an insurer); *id.* § 507C.17A(2) (permitting the insurance commissioner to petition the district court for an order of rehabilitation or liquidation of a domestic insurer); *id.* § 521A.9(1) (authorizing the commissioner to seek an injunction to prevent a violation of the Insurance Holding Company Systems Chapter); *Huff v. St. Joseph's Mercy Hosp. of Dubuque Corp.*, 261 N.W.2d 695, 698 (Iowa 1978) (recognizing the commissioner's power to seek an injunction against violators of the HMO Act).

case, there is nothing inconsistent in allowing the IIHBRA to have the power to sue to enforce the statute it administers.

For these reasons, we hold the IIHBRA has the capacity to sue its members to compel reporting and to collect assessments owed under chapter 513C. We next consider whether the IIHBRA's civil action may proceed in district court or instead is subject to mandatory arbitration.

**B. Jurisdictional Challenge.** The universities argue that even if the IIHBRA has capacity to sue, this dispute is subject to mandatory arbitration. Neither the district court nor court of appeals decided this issue. Iowa Code section 679A.19 governs disputes between government agencies:

> Any litigation *between administrative departments, commissions or boards of the state government* is prohibited. All disputes between *said governmental agencies* shall be submitted to a board of arbitration of three members to be composed of two members to be appointed by the departments involved in the dispute and a third member to be appointed by the governor. The decision of the board shall be final.

Iowa Code § 679A.19 (emphasis added). The plain language of the statute limits its application to administrative departments, commissions, and boards of state government. *See State ex rel. Iowa Dep't of Health v. Van Wyk*, 320 N.W.2d 599, 602 (Iowa 1982) ("Under section [679A.19], litigation is prohibited between administrative departments, commissions, or boards of state government."). Under this statute, disputes that are fundamentally between executive branch departments must be resolved through arbitration; litigation in the courts is prohibited. *Id.* We have never applied this section to an entity that was not an administrative department, commission, or board of state government. *See id.* (holding dispute between the board of chiropractic examiners and the Iowa Department of Health required

arbitration under section 679.19 (1981)[8]); *Llewellyn,* 200 N.W.2d at 884 (holding a dispute between the Board of Engineering Examiners and the State Commerce Commission required arbitration).

If the legislature had intended to make the IIHBRA a board, commission, or department, it presumably would have used one of those terms to describe it, as it has done in numerous other statutes creating such entities. The legislature identifies boards of state government as "boards" in our statutes. *See, e.g.,* Iowa Code § 272C.1(6) (2013) (defining "licensing board" to include thirty-one different positions or boards created pursuant to statute).[9] State administrative departments are also typically denominated as such by the respective enabling acts. *See, e.g., id.* § 7E.5(1) (providing a nonexclusive list of the twenty-three "principal central departments of the executive branch").[10] Other entities

---

[8]This provision was originally codified at Iowa Code section 679.19. *See* 1959 Iowa Acts ch. 363, § 1. It was transferred to section 679A.19 in 1981. 1981 Iowa Acts ch. 202, § 19. The text of the statute was not altered. *See id.*

[9]The thirty-one enumerated examples of a licensing board are the state board of engineering and land surveying examiners; the board of examiners of shorthand reporters; the accountancy examining board; the real estate commission; the board of architectural examiners; the board of landscape architectural examiners; the board of barbering; the board of chiropractic; the board of cosmetology arts and sciences; the dental board; the board of mortuary science; the board of medicine; the board of physician assistants; the board of nursing; the board of nursing home administrators; the board of optometry; the board of pharmacy; the board of physical and occupational therapy; the board of podiatry; the board of psychology; the board of speech pathology and audiology; the board of hearing aid specialists; the board of veterinary medicine; the director of the department of natural resources; the board of respiratory care and polysomnography; the board of athletic training; the board of massage therapy; the board of sign language interpreters and transliterators; the director of public health; the plumbing and mechanical systems board; and the department of public safety. Iowa Code § 272C.1(6). Additional boards created by enabling statutes include the real estate improvement district board of trustees and the Bushy Creek recreation area trails advisory board. *Id.* § 358C.13(1) (setting out the real estate improvement district board of trustees); *id.* § 455A.8 (creating the Brushy Creek recreation area trails advisory board).

[10]The state administrative departments are the department of management; the department of administrative services; the department of revenue; the department of

are expressly identified as a "department." *See, e.g., id.* § 135.62(2) (creating the state health facilities council as a division of the department of health). The legislature also calls a "commission" a "commission" when it creates one. *See, e.g., id.* § 521.5 ("A commission consisting of the commissioner of insurance and the attorney general is hereby created . . . .").[11] The universities have not provided any statutory support for their contention that the IIHBRA is a board, department, or commission, and on our review of the Code, we have found none.

The IIHBRA notes other indications that it is not an arm of state government. The employees of the IIHBRA are not paid by the State of Iowa. By contrast, the staff members of state boards and commissions are state employees. Most of the members of the IIHBRA are private entities. A majority of its board of directors are private persons or representatives of private insurers, although our state boards and commissions are also populated with private citizens. The IIHBRA is represented by private legal counsel, while the universities and other state boards, commissions, and departments are represented by the Iowa

---

inspections and appeals; the department of agriculture and land stewardship; the department of commerce; the economic development authority; the department of workforce development; the department of human services; the department of public health, the department of aging; the department of cultural affairs; the department of education; the department of corrections; the department of public safety; the department of public defense; the department of natural resources; the state department of transportation; the department of human rights; an agency headed by the state board of regents; the department for the blind; the department of veterans affairs; and the department of homeland security and emergency management. Iowa Code § 7E.5(1).

[11]The legislature has also created the alcoholic beverages commission, the dairy industry commission, a pay-for-performance commission, and the state transportation commission. *See* Iowa Code § 123.5(1) ("An alcoholic beverages commission is created . . . ."); *id.* § 179.2(1) ("There is created an Iowa dairy industry commission . . . ."); *id.* § 284.14(2) ("A pay-for-performance commission is established . . . ."); *id.* § 307A.1A(1) ("There is created a state transportation commission . . . .").

Attorney General. The IIHBRA is funded by its assessments collected primarily from private sources. It does not receive appropriations or funding from the State treasury (except indirectly to the extent public entities pay assessments).

Section 679A.19 was enacted to reduce the costs of resolving disputes between two state agencies. When this provision was proposed, the purpose of the bill was to lower litigation costs for internecine disputes between state departments:

> This bill would prevent litigation between state departments over disputes of questions of law or fact. Such litigation is expensive, time-consuming and wasteful of public funds. Legal counsel is employed on both sides and in many cases such litigation continues for years. This bill would submit such internecine disputes to arbitration.

H.F. 594, 58th G.A., Reg. Sess., explanation (Iowa 1959). This case is not a dispute between two public entities with both sides represented by the attorney general at public expense—the recurring situation this statute was enacted to address.

The universities note that the legislature has created various nonprofit corporations for economic development and research purposes through statutes that expressly provide the entity is not a state agency or subject to the privileges or requirements of a state agency. *See, e.g.*, Iowa Code § 7D.15 (creating the public policy research foundation under chapter 504, noting it "is not a state agency and shall not exercise any sovereign power of the state," and providing "the state is not liable for any debts of the foundation"); *id.* § 15E.64 (authorizing the Iowa capital investment corporation and providing that it "is not a public corporation or instrumentality of the state and shall not enjoy any of the privileges and shall not be required to comply with the requirements of a state agency"); *id.* § 15E.204 (creating the agricultural industry finance

corporation as "a private business corporation and not a public corporation or instrumentality of the state"); *see also id.* § 480.3 (creating a statewide notification center under chapter 504 and stating its board "is subject to chapters 21 and 22"). It is a good idea for the legislature to include such language in the enactment that creates a nonprofit entity to clarify whether the entity is or is not subject to disclosure obligations and other duties of state agencies. But the absence of such language in chapter 513C does not transform the IIHBRA into an administrative department, commission, or board of the state government.

In their appellate brief, the universities raise for the first time a state constitutional challenge to any assessment against them under Iowa Code chapter 513C, as violating article VII, section 1 of the Iowa Constitution, which provides,

> The credit of the State shall not, in any manner, be given or loaned to, or in aid of, any individual, association, or corporation; and the State shall never assume, or become responsible for, the debts or liabilities of any individual, association, or corporation, unless incurred in time of war for the benefit of the State.

The universities, relying on *Grout v. Kendall*, 195 Iowa 467, 192 N.W. 529 (1923), argue this provision prohibits the state from "incurring obligations by the indirect method of secondary liability." They contend, "The assessments at issue are redistributed to cover the losses of private insurance carriers. The Regents would thus become responsible for the debts of a corporation, which is constitutionally prohibited." The universities neglected to cite our more recent decision in *Star Equipment*, which rejected a challenge under article VII, section 1. 843 N.W.2d at 462–63. Regardless, we decline to reach the universities' constitutional challenge because they did not raise it in district court. "It is a fundamental doctrine of appellate review that issues must ordinarily be

both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). The universities may raise that constitutional issue on remand, and we express no opinion on its merits.

### IV. Conclusion.

For these reasons, we vacate the opinion of the court of appeals and reverse the district court ruling that granted the universities' motion to dismiss. We remand this case for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT ORDER REVERSED; CASE REMANDED.**