# IN THE SUPREME COURT OF IOWA

No. 22–1213

Submitted September 14, 2023—Filed December 29, 2023
Amended January 2, 2024

**IOWA INDIVIDUAL HEALTH BENEFIT REINSURANCE ASSOCIATION,**

Appellee,

vs.

**STATE UNIVERSITY OF IOWA, IOWA STATE UNIVERSITY OF SCIENCE AND TECHNOLOGY,** and **UNIVERSITY OF NORTHERN IOWA,**

Appellants.

Appeal from the Iowa District Court for Polk County, Heather Lauber, (summary judgment) and Celene Gogerty (summary judgment and trial), Judges.

Appeal and cross-appeal from a decision of the district court holding that state universities were members of a statutorily created health benefit reinsurance association and were required to pay assessments to the association. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Brenna Bird, Attorney General; Jeffrey S. Thompson, Solicitor General; Tessa M. Register (argued), Assistant Solicitor General; David Faith (until withdrawal), Deputy Attorney General; and Jordan Esbrook, Assistant Attorney General (until withdrawal), for appellants.

Gregory M. Lederer (argued) of Lederer Weston Craig PLC, West Des Moines, for appellee.

**McDONALD, Justice.**

In 1995, the legislature passed the Individual Health Insurance Market Reform Act. 1995 Iowa Acts ch. 5, §§ 3–13 (codified at Iowa Code chapter 513C (1997)). The stated purpose of the Act was "to promote the availability of health insurance coverage to individuals" and to "improve the overall fairness and efficiency of the individual health insurance market." Iowa Code § 513C.2 (2013). To advance that purpose, the Act created a nonprofit corporation, the Iowa Individual Health Benefit Reinsurance Association (IIHBRA). Under the law, "[a]ll persons that provide health benefit plans in this state . . . shall be members of the association." *Id.* § 513C.10(1)(*a*). All members of IIHBRA are required to provide IIHBRA with information regarding their earned premium and associated losses. *Id.* § 513C.10(3). IIHBRA is statutorily authorized to assess its members based on that information and to use the assessments to help equalize gains and losses of its members. *Id.* §§ 513C.10(4)–(7).

At all times relevant to this litigation, the State University of Iowa (UI), Iowa State University (ISU), and the University of Northern Iowa (UNI) provided self-funded health benefit plans to their respective employees. In 2011, IIHBRA assessed the universities, but the universities refused to pay the assessment. The universities contended that, among other things, they were not members of IIHBRA subject to assessment and that the statute, as applied to them, violated article VII, section 1 of the Iowa Constitution, which prohibits the state from acting as a surety for another.

IIHBRA sued the universities for the unpaid assessments. Following a bench trial on a stipulated record, IIHBRA was awarded over $4 million as damages for unpaid assessments. The universities filed this appeal. They contend the district court erred in concluding they were subject to assessment. They also contend the statutory scheme, as applied to them, violates article VII,

section 1 of the Iowa Constitution. IIHBRA filed a cross-appeal. IIHBRA contends the district court erred in not awarding it additional damages, including late payment fees and its costs and attorney fees incurred pursuing this litigation.

I.

IIHBRA initiated this suit in November 2013. IIHBRA sought to compel the universities to provide their earned premium and associated loss information and sought to collect unpaid assessments for the years 2010 and 2011. On the universities' motion, the district court dismissed the case on the ground that IIHBRA did not have the statutory authority to sue its members. This court reversed the judgment of the district court and remanded the case for further proceedings. *Iowa Individual Health Benefit Reins. v. State Univ. of Iowa* (*2016 IIHBRA*), 876 N.W.2d 800, 812 (Iowa 2016).

> In that decision we provided an overview of the statutory scheme:
>
> The purpose and intent of this chapter is to promote the availability of health insurance coverage to individuals regardless of their health status or claims experience, to prevent abusive rating practices, to require disclosure of rating practices to purchasers, to establish rules regarding the renewal of coverage, to establish limitations on the use of preexisting condition exclusions, to assure fair access to health plans, and to improve the overall fairness and efficiency of the individual health insurance market.

*Id.* at 802–03 (quoting Iowa Code § 513C.2). We explained in detail how IIHBRA was formed and how it operated, *see id.* at 802–04, and we need not repeat that discussion herein. We held that IIHBRA had "the capacity to sue its members to compel reporting and to collect assessments owed under chapter 513C." *Id.* at 809. We specifically declined, however, to "reach the question whether the universities [were] members of the IIHBRA, an allegation the universities accepted as true for purposes of the motion to dismiss," and we stated the parties "may litigate that issue on remand." *Id.* at 804 n.2. We also declined to reach the

universities' constitutional argument arising under article VII, section 1 of the Iowa Constitution because the universities raised the constitutional argument for the first time on appeal. *Id.* at 812. We concluded the "universities may raise that constitutional issue on remand." *Id.*

We remanded the case to the district court in April 2016. On remand, IIHBRA filed an amended petition. In the amended petition, IIHBRA sought to compel the universities to provide premium and loss information for the years 2011–2014 and sought to recover any unpaid assessments for those same years.

In response, UNI and ISU filed counterclaims against IIHBRA. Between 1997 and 2010, UNI and ISU provided self-funded health benefit plans to their employees. Between 1997 and 2010, UNI and ISU acted as members of IIHBRA and paid assessments to IIHBRA in the amount of $856,546.58 and $2,421,036.60, respectively. In their counterclaims, UNI and ISU claimed that they were mistaken to pay the assessments, that IIHBRA lacked the authority to collect these assessments, that IIHBRA was unjustly enriched by UNI and ISU's payments, and that IIHBRA should have to repay the assessments UNI and ISU voluntarily paid for thirteen years.

UI did not assert a similar counterclaim because it had not paid any assessments between 1997 and 2010. During that time, UI contracted with an insurer to provide health benefit plans to its employees. UI's insurer, as the provider of the health benefit plan, rather than UI, was a member of IIHBRA. In 2010, UI switched to a self-funded health benefit plan. UI took the position that it was not a member of IIHBRA as defined in section 513C.10(1)(*a*). It was at this time that UNI and ISU also claimed they were not members of IIHBRA.

After the filing of the amended petition, answers, and counterclaims, the case inexplicably languished for years. In the summer of 2019, the parties filed cross-motions for summary judgment on the question of whether the universities

were members of IIHBRA. In support of its motion, IIHBRA filed several exhibits. The first was a memorandum dated February 1996 from an assistant attorney general provided to the Iowa Insurance Commissioner. In the memorandum, the assistant attorney general opined that self-funded government health plans were "required to be part of the IIHBRA." The second was an insurance bulletin issued by the insurance commissioner in March 1996 stating that IIHBRA included "self-insured plans for government employees authorized under Iowa Code Chapter 509A." The universities' health benefit plans are provided pursuant to chapter 509A. The third was a memorandum from the Director of the Iowa Department of Management to the insurance commissioner dated October 2012. The memorandum concluded that the universities were members of IIHBRA and were "required to pay assessments as set forth in the formula established by the Association." The fourth was an affidavit from the firm administering IIHBRA's assessment process. The affidavit stated that UNI and ISU participated as members of IIHBRA from IIHBRA's inception until 2010.

In the cross-motions for summary judgment, the parties also contested the constitutionality of the assessment. Article VII, section 1 of the Iowa Constitution provides as follows:

> The credit of the state shall not, in any manner, be given or loaned to, or in aid of, any individual, association, or corporation; and the state shall never assume, or become responsible for, the debts or liabilities of any individual, association, or corporation, unless incurred in time of war for the benefit of the state.

In the universities' view, the statutory assessment scheme, as applied to them, violated this constitutional provision.

In October 2019, the district court granted IIHBRA's motion for summary judgment and denied the universities' motion for summary judgment. The district court held the universities were members of IIHBRA as set forth in

section 513C.10(1)(*a*). The district court rejected the universities' constitutional argument. The district court reasoned that the statutory assessment did not make the universities sureties or otherwise responsible for the debt of another. Almost two years after the district court filed its ruling, the universities filed a second motion for summary judgment and again contested the issue of whether they were members of IIHBRA. The district court again denied the motion. The universities challenge these summary judgment rulings in this appeal.

Trial was scheduled to occur in February 2022. In preparation for trial, the universities filed their witness and exhibit list and moved in limine to exclude certain evidence of damages. In support of their motion in limine, the universities explained that IIHBRA had provided an exhibit purporting to calculate damages from 2010 to 2017 even though IIHBRA had sent assessments only for the years 2010 and 2016. The universities noted that they had attempted to obtain discovery from IIHBRA regarding IIHBRA's claimed damages since 2019 without any response. The universities moved to exclude any claim of damages after 2017, any documentary evidence of damages, and any testimony about the amount of damages after 2017.

On the eve of trial, the parties agreed to "submit a joint factual stipulation, as well as affidavits, in lieu of a trial." To prepare the joint factual stipulation, the universities provided the earned premium and associated loss information necessary for IIHBRA to calculate the amounts that would have been assessed for the years 2010–2017. It appears that IIHBRA provided the universities with additional information so that the universities would have enough information to stipulate to the assessments.

The parties ended up not submitting a stipulation of facts to the district court. Instead, the parties submitted two exhibits and a "submission" to the district court. Exhibit 1 showed the stipulated amount of what the assessments

would have been for the years 2010–2017 if IIHBRA had issued assessments for each of those years. The stipulated total amounts were $366,427 for UNI, $1,013,236 for ISU, and $3,020,988 for UI. Exhibit 1 also showed additional damages in the form of a late payment fee in the amount of 5% per annum. The total amounts owed, including the late payment, as set forth in exhibit 1 were $512,758 for UNI, $1,416,608 for ISU, and $4,194,041 for UI. Exhibit 2 was IIHBRA's plan of operation. The plan of operation authorized a late payment fee of 1.5% per month from the billing date of any assessment. In addition to these two documents, IIHBRA filed a document entitled "Submission on Expense of Collecting Assessments." This document represented that IIHBRA incurred $89,180.50 in attorney fees and costs in trying to collect from the universities.

The parties filed written briefs and presented closing arguments to the district court. In their brief and during oral argument, the universities did not contest the sufficiency of the evidence regarding the amount of the revised assessments and late payment fees set forth in stipulated exhibit 1. During oral argument, the universities conceded the amounts in exhibit 1 were correct and should be imposed to reach a final judgment:

> Greg [(IIHBRA's lawyer)] is correct that there's no real dispute on the amounts of the assessments. We have talked. He has given us a copy of the Exhibit 1 before today's hearing and before he submitted it to the Court; and so we accept that the amounts of the assessments are what should be imposed to reach a final judgment and move forward with the case.
>
> And so I think that was helpful for Greg to point out just -- There are different calculations in Exhibit 1 for the revised assessments, which are kind of third up from the bottom in those horizontal sections, and then the late fees on the late fees added on.

The universities did contest, however, that IIHBRA was statutorily authorized to impose late payment fees for unpaid assessments. The only contested issue at

this stipulated trial was the legal question of whether IIHBRA had the statutory authority to assess its members late payment fees.

The district court awarded IIHBRA the amount of the revised assessments as set forth in exhibit 1. The district court rejected the universities' argument that IIHBRA was not statutorily authorized to impose a late payment fee. The district court concluded, however, that IIHBRA was not entitled to the late payment fees. In the district court's view, there was a question on "whether IIHBRA calculated the late fee for the [universities] at either a rate of 1.5% per month or a rate of 5% per month." Because neither party "has adequately established facts in the record to support the actual rate," the district court declined to award any late payment fees. The district court also declined to award IIHBRA its attorney fees and costs. The district court concluded the fees and expenses were not authorized by statute, contract, or common law. In this appeal, IIHBRA challenges the district court's ruling on damages.

II.

We first address the question of whether the universities are required to be members of IIHBRA pursuant to Iowa Code section 513C.10(1)(*a*). We review the district court's ruling on this question of statutory interpretation for the correction of errors at law. *Sand v. An Unnamed Loc. Gov't Risk Pool*, 988 N.W.2d 705, 708 (Iowa 2023). On questions of statutory interpretation, the judicial function is to determine the ordinary meaning of the statute at issue. *Id.* In determining the ordinary meaning of the statute, "[w]e read statutes as a whole." *State v. Boone*, 989 N.W.2d 645, 649 (Iowa 2023). "[W]e take into consideration the language's relationship to other provisions of the same statute and other provisions of related statutes." *Sand*, 988 N.W.2d at 708 (quoting *Landowners v. S. Cent. Reg'l Airport Agency*, 977 N.W.2d 486, 495 (Iowa 2022)). "We presume

statutes or rules do not contain superfluous words." *Boone*, 989 N.W.2d at 650 (quoting *State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 474 (Iowa 2017)).

Applying these principles of statutory interpretation here, the relevant statute, fairly read, requires that the universities be members of IIHBRA. The statute provides:

> *a.* **All persons that provide health benefit plans in this state** including insurers providing accident and sickness insurance under chapter 509, 514, or 514A, whether on an individual or group basis; fraternal benefit societies providing hospital, medical, or nursing benefits under chapter 512B; and health maintenance organizations, organized delivery systems, other entities providing health insurance or health benefits subject to state insurance regulation, and all other insurers as designated by the board of directors of the Iowa comprehensive health insurance association with the approval of the commissioner **shall be members of the association**.

Iowa Code § 513C.10(1)(*a*) (emphasis added). We focus on the bolded text first. The universities are "persons" within the meaning of section 513C.10(1)(*a*). *See id.* § 4.1(20) (defining "persons" to include corporations, governmental subdivisions or agencies, or any other legal entity). The universities undisputedly also provide "health benefit plans in this state." *Id.* § 513C.10(1)(*a*). It necessarily follows that the universities "shall be members of the association." *Id.* It is immaterial that the universities are not insurers and do not provide individual policies. The statute provides that a "member is liable for its share of the assessment . . . regardless of whether it participates in the individual insurance market." *Id.* § 513C.10(6).

This straightforward interpretation of the statute was noncontroversial and seemed to be the commonly accepted understanding of the statute among relevant government officials and entities, at least until this dispute arose. The insurance commissioner's insurance bulletin issued in March 1996 stated that IIHBRA included "self-insured plans for government employees authorized under

Iowa Code Chapter 509A." The universities' health benefit plans were and are provided pursuant to chapter 509A. In 2012, the Director of the Iowa Department of Management issued a memorandum to the insurance commissioner, concluding the universities were members of IIHBRA and were "required to pay assessments as set forth in the formula established by the Association." And between 1997 and 2010, UNI and ISU acted as members of IIHBRA and voluntarily paid assessments to IIHBRA. None of these facts are dispositive or control our interpretation of the statute at issue; however, these facts are "informative." *Sand*, 988 N.W.2d at 712.

The universities resist this straightforward reading of the statutory text. In their current view, the phrase "[a]ll persons that provide health benefit plans in this state" is restricted by the prepositional phrase "including insurers providing accident and sickness insurance under chapter 509, 514, or 514A ." Iowa Code § 513C.10(1)(*a*). Under the universities' current reading of the statute, only the persons specifically identified in this prepositional phrase can be members of IIHBRA. The restricted set of members, according to the universities, includes only:

- "insurers providing accident and sickness insurance under chapter 509, 514, or 514A, whether on an individual or group basis";

- "fraternal benefit societies providing hospital, medical, or nursing benefits under chapter 512B";

- "and health maintenance organizations";

- "other entities providing health insurance or health benefits subject to state insurance regulation";

- "and all other insurers as designated by the board of directors of the Iowa comprehensive health insurance association with the approval of the commissioner."

*Id.* The universities argue they are not insurers, fraternal benefit societies, or health maintenance organizations. The universities concede that they are "other entities providing health benefits," but they dispute that they are "subject to state insurance regulation." *Id.* The universities argue that because they do not fall within any of the enumerated subcategories of persons providing health benefits, they are not members of IIHBRA.

The universities' argument hinges on an unduly restrictive interpretation of the word "including." The word "including" can have different meanings depending on context. The word can be expansive. In that case, the terms following the word "including" "are simply illustrative of the types" of a larger category. *Eyecare v. Dep't of Hum. Servs.*, 770 N.W.2d 832, 838 (Iowa 2009). The word can also be restrictive. In that case, the terms following the word "including" "are an exhaustive (and restricted) list of" the only types within a category. *Id.* When this statute is read as a whole, the only permissible interpretation of "including" "is not one of all-embracing definition, but [one that] connotes simply an illustrative application of the general principle." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941). Here, the statute provides that "all persons" that provide health benefit plans in this state "shall be members" of IIHBRA. Iowa Code § 513C.10(1)(*a*). "The word 'all' is commonly understood and usually does not admit of an exception, addition or exclusion." *Consol. Freightways Corp. of Del. v. Nicholas*, 137 N.W.2d 900, 904 (Iowa 1965). Interpreting "the word 'including' to introduce an exclusive list," as the universities would have us do, "would conflict with the word 'all.' " *Luttenegger v. Conseco Fin. Servicing Corp.*, 671 N.W.2d 425, 434 (Iowa 2003). The universities' interpretation of the statute thus contravenes our general rule that we interpret statutes "in such a way that portions of it do not become

redundant or irrelevant." *Mall Real Est., L.L.C. v. City of Hamburg*, 818 N.W.2d 190, 198 (Iowa 2012).

### III.

The universities argue that chapter 513C, as applied to them, would violate article VII, section 1 of the Iowa Constitution. We have interpreted article VII, section 1 on several occasions. In *Grout v. Kendall*, we discussed the history behind this constitutional provision:

> This particular section of our Constitution was taken bodily from the Constitution of New York. As a part of the Constitution of New York, it was the result of past experience in the history not only of New York, but of other states as well, whereby aspiring new states had loaned their credit freely and extravagantly to corporate enterprises which had in them much seductive promise of public good. These enterprises included railways, canals, water powers, etc. The corporate body in each case was the primary debtor; the state became the underwriter; it loaned its credit always with the assurance and belief that the primary debtor would pay. Pursuant to these secondary liabilities, the state became overwhelmed with millions of dollars of indebtedness which never would have been undertaken as a primary indebtedness, and which never would have been permitted by public sentiment, if it had been known or believed that the secondary liability would become a primary one through the universal failure of the primary debtor.

192 N.W. 529, 531 (Iowa 1923). We concluded that article VII, section 1 was intended to protect against the "delusion of suretyship with its snare of temptation." *Id.* And after *Grout*, we stated, "This constitutional provision withholds from the state all power or function of suretyship." *John R. Grubb, Inc. v. Iowa Hous. Fin. Auth.*, 255 N.W.2d 89, 98 (Iowa 1977) (en banc).

We most recently interpreted and applied article VII, section 1 in *Star Equipment, Ltd. v. State*, 843 N.W.2d 446 (Iowa 2014). That case involved the constitutionality of a statute that "govern[ed] subcontractors' remedies [against the State] for unpaid work on public improvements when the state waive[d] the performance bond for a general contractor that [was] a 'Targeted Small

Business.'" *Id.* at 449. In analyzing the constitutionality of the statute, we explained that "article VII, section 1 is a narrow prohibition." *Id.* at 460. The narrow prohibition forbids the government from incurring secondary liability. *See id.* It does not prohibit the government from creating primary liability for itself. *See id.*; *Edge v. Brice*, 113 N.W.2d 755, 758 (1962) (finding a statute constitutional when "a primary obligation [is] placed on the state"); *Grout*, 192 N.W. at 531 ("[T]he prohibition of section 1, art. [VII], has no reference to the creation of a primary indebtedness."). In *Star Equipment*, we rejected the challenge to the statute, concluding that the statute "obligating the state to pay subcontractors' unsatisfied claims" was a primary obligation and not a secondary obligation. 843 N.W.2d at 461–62. We further concluded that the "evils sought to be avoided by article VII, section 1 are not present here." *Id.* at 463. Requiring the state to pay for work performed for its benefit was "quite unlike the costly state government bailouts of investors in privately owned canals and railroads that prompted the adoption of . . . article VII, section 1." *Id.*

Chapter 513C's requirement that the universities, in their capacities as providers of health benefit plans, shall be members of IIHBRA does not violate article VII, section 1. As in *Star Equipment*, the universities are not acting as sureties here. Suretyship involves the obligation to make payments for the debts of another. Under the statute, the universities are not paying the debts of private insurers. Instead, the universities are paying a primary liability created by statute and imposed on all persons who provide health benefit plans. The primary statutory liability is imposed in exchange for the benefit of allowing employers, including the state, to provide self-funded health benefit plans to their employees. Further, the assessments are not used to pay the debts of another. Instead, the assessments are used to create a fund to "spread[] the cost

of high-risk health insurance policies for Iowans." *2016 IIHBRA*, 876 N.W.2d at 808.

In addition, the statutory scheme does not implicate the same concerns that prompted the constitutional provision at issue. Article VII, section 1 removed the "delusion of suretyship," "whereby aspiring new states had loaned their credit freely and extravagantly to corporate enterprises which had in them much seductive promise of public good." *Grout*, 192 N.W. at 531. Here, the statutory scheme benefits the state by facilitating healthcare coverage for all Iowans. The statutory scheme also benefits the universities directly by allowing them to provide health benefit plans to their employees. The statute does so in a way that does not make them liable for the debts of another but instead creates a primary liability in exchange for the benefit. This legislative scheme is "quite unlike the costly state government bailouts of investors in privately owned canals and railroads that prompted the adoption of . . . article VII, section 1." *Star Equip.*, 843 N.W.2d at 463.

## IV.

Having concluded that the universities are members of IIHBRA and that the statute, as applied to the universities, does not violate the constitution, we next address the question of damages, including IIHBRA's claim for late payment fees and IIHBRA's claim for attorney fees and costs.

## A.

The universities first contest whether IIHBRA has the statutory authority to assess late payment fees against its members. As the universities see things, IIHBRA was created by statute, its authority is limited to that provided for by statute, and no statute authorizes late payment fees. The universities focus on Iowa Code section 513C.10(6), which states that IIHBRA may charge members "[t]he assessable loss plus [any] necessary operating expenses" and "additional

expenses as provided by law." The universities argue that late fees are not operating expenses or authorized additional expenses.

The universities' statutory aperture is too narrow; other provisions are relevant here. Iowa Code section 513C.10(1)(*b*) provides that IIHBRA shall be incorporated as a nonprofit corporation under chapter 504 and "shall operate under a plan of operation established and approved" under that chapter. Section 504.614 states that "[a] member may become liable to the corporation for dues, assessments, or fees." *Id.* § 504.614. This authorization for "fees" against members reasonably includes late fees. Section 504.302 also empowers IIHBRA to "[d]o all things necessary or convenient, not inconsistent with law, to further the activities and affairs of the corporation." *Id.* § 504.302(17). Late fees are "necessary," or at the very least "convenient," to further the affairs of IIHBRA. *Id.* The universities conceded this during argument at trial. Counsel stated that the late payment fees are "an incentive for members to pay on time, which makes sense, but they're not authorized by law, and I don't think they can be enforced by this Court."

But they can. There is nothing in chapter 513C that disallows or otherwise limits IIHBRA's exercise of the statutory power provided in chapter 504 to assess its members late payment fees. *See id.* § 504.301(2) ("A corporation engaging in an activity that is subject to regulation under another statute of this state . . . shall be subject to all limitations of the other statute."). Section 513C.10(6) describes how IIHBRA may assess its members. But, contrary to the universities' view, it says nothing about what IIHBRA may (or may not) do when its members fail to pay their assessments as required. And it certainly does not disallow IIHBRA's decision to incent timely payment of assessments by imposing a late payment fee. In short, nothing in section 513C.10, generally, or section 513C.10(6), specifically, makes late payment fees "inconsistent with law"

under chapter 504. *See 2016 IIHBRA*, 876 N.W.2d at 804–05 (concluding that chapter 513C's silence about IIHBRA's ability to bring suit did not restrict IIHBRA from pursuing claims for unpaid assessments based on authority granted under chapter 504).

B.

Although the district court correctly concluded that IIHBRA was statutorily authorized to impose late payment fees against its members, the district court declined to award late payment fees here. The district court found there was insufficient evidence "whether IIHBRA calculated the late fee for the [universities] at either a rate of 1.5% per month or a rate of 5% per month." The universities repeat that refrain on appeal, contending there was insufficient evidence to establish the late payment fee.

We conclude the district court erred in declining to award IIHBRA's the 5% late payment fee as set forth in stipulated exhibit 1. "In construing stipulations the court should always attempt to ascertain and give effect to the intention of the parties." *Hawkins/Korshoj v. State Bd. of Regents*, 255 N.W.2d 124, 126 (Iowa 1977). We must examine the "stipulation with reference to its subject matter and in light of the surrounding circumstances and whole record including the state of the pleadings and issues involved." *Id.* at 126–27. In light of the surrounding circumstances and the whole record, it is clear the parties calculated the 5% fee on an annual basis and not a monthly basis. The district court created a controversy on an issue where the parties had none.

Further, the record shows the universities agreed to the amounts set forth in exhibit 1 and further agreed these amounts should be "imposed to reach a final judgment and move forward with the case." The universities only contested whether IIHBRA was statutorily authorized to assess a late payment fee. They took no issue with the sufficiency of the evidence supporting the late payment

fee as set forth in exhibit 1, and they should not be able to do so now. If the universities had put IIHBRA on notice at the time of final submission that they believed the stipulated exhibit was insufficient to establish this part of the damages claim, IIHBRA would have had the opportunity either to go to trial or produce further evidence instead of relying solely on the stipulated record. *See Ag Partners, L.L.C. v. Chi. Cent. & Pac. R.R.*, 726 N.W.2d 711, 718–19 (Iowa 2007) (remanding case where damages were tried on a stipulated record, evidence was insufficient, but plaintiff did not have the opportunity to reopen the record and provide further evidence in support of stipulation). Based on the unique manner in which the issue of damages was submitted to the court and the way the parties framed the issue to the district court, we conclude IIHBRA proved its entitlement to the 5% late payment fee set forth in stipulated exhibit 1.

C.

Finally, we address IIHBRA's contention that the district court erred in denying its request for attorney fees and costs incurred in collecting the assessments from the universities. We find no error here.

Iowa follows the American rule regarding costs and attorney fees: the losing litigants do not normally pay the prevailing party's costs and fees. *NCJC, Inc. v. WMG, L.C.*, 960 N.W.2d 58, 62 (Iowa 2021). Generally, attorney fees and costs "are recoverable only by statute or under a contract." *Id.* (quoting *Guardianship & Conservatorship of Radda v. Wash. State Bank*, 955 N.W.2d 203, 214 (Iowa 2021)). IIHBRA contends that it is statutorily entitled to attorney fees by virtue of Iowa Code section 513C.10(6), which provides that "[t]he assessable loss plus necessary operating expenses for the association . . . shall be assessed by the association to all members in proportion to their respective shares of total health insurance premiums or payments." On IIHBRA's reading of this statute, attorney fees are recoverable as operating expenses.

We conclude this statute does not authorize the award of attorney fees and costs. First, the statute provides that IIHBRA's operating expenses may be included in the assessments levied out proportionally among all members. It does not authorize the recovery of costs against opponents in litigation. Second, and related, under this court's precedents, the authorization for attorney fees "must be expressed and 'must come clearly within the terms of the statute.'" *Botsko v. Davenport C.R. Comm'n*, 774 N.W.2d 841, 845 (Iowa 2009) (quoting *Thorn v. Kelley*, 134 N.W.2d 545, 548 (Iowa 1965)). This statute does not clearly authorize an award of attorney fees and costs.

Nor does the common law authorize an award of attorney fees and costs on this record. In addition to a statutory entitlement to fees, "[t]here is a 'rare' common law exception . . . permitting recovery of attorney fees when the defendant 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Thornton v. Am. Interstate Ins.*, 897 N.W.2d 445, 474 (Iowa 2017) (quoting *Miller v. Rohling*, 720 N.W.2d 562, 573 (Iowa 2006)). This type of fee award is "a special kind of compensatory damage." *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines*, 510 N.W.2d 153, 159 (Iowa 1993). To establish an entitlement to a common law fee award, the plaintiff "must prove that the culpability of the defendant's conduct exceeds the 'willful and wanton disregard for the rights of another'; such conduct must rise to the level of oppression or connivance to harass or injure another." *Id.* at 159–60. There is no evidence in this record showing the universities' conduct rose to the level of "oppression or connivance to harass or injure another." *Id.* at 160.

## V.

For the reasons expressed above, we affirm the district court's ruling that the universities are members of IIHBRA, we affirm the district court's ruling that the statutory scheme does not violate article VII, section 1 of the Iowa

Constitution, and we affirm the district court's denial of IIHBRA's request for attorney fees and costs. We reverse the district court's ruling with respect to IIHBRA's request for late payment fees; we vacate the judgment; and we remand this matter for entry of judgment for $512,758 against UNI, $1,416,608 against ISU, and $4,194,041 against UI.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**