# IN THE COURT OF APPEALS OF IOWA

No. 15-0785
Filed July 27, 2016

**BERNICE GILL,**
        Plaintiff-Appellee,

**vs.**

**BILL VORHES and VORHES, LTD.,**
        Defendants-Appellants.
_____

        Appeal from the Iowa District Court for Floyd County, Christopher Foy,

Judge.


        Bill Vorhes appeals from personal judgment entered against him in favor

of Vorhes, Ltd., a farm corporation.  The corporation appeals the court's ruling

requiring the payment of Bernice Gill's attorney fees.  **AFFIRMED ON BOTH**

**APPEALS**.


        Charles H. Biebesheimer of Stillman Law Firm, Clear Lake, for appellant

Bill Vorhes.

        Lawrence H. Crosby of Crosby & Associates, Saint Paul, Minnesota, and

Todd Kowalke, Cresco, for appellant Vorhes, Ltd.

        Chad A. Swanson of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo,

for appellee.


        Heard by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**DANILSON, Chief Judge.**

Bill Vorhes appeals from personal judgment entered against him in favor of Vorhes, Ltd., a farm corporation. The corporation appeals the court's ruling requiring the payment of Bernice Gill's attorney fees in connection with these proceedings on its behalf.

We affirm on Bill Vorhes' appeal. Bernice Gill adequately represented the corporation. We reject his contention that Bernice did not meet the "formalities required by Iowa law to litigate a shareholder derivative action." Bill did not prove his debts to the corporation had been forgiven. We do not address the statute-of-limitations contention because it was not timely raised.

We also affirm the award of attorney fees. The 2013 amendment to Iowa Code section 490.746 did not deprive the district court of authority to award attorney fees, and we find no abuse of discretion in the amount of fees awarded.

**I. Background Facts and Proceedings.**

Vorhes, Ltd. is a closely-held family-farm corporation that was incorporated on April 1, 1978, by spouses, Vern and Irene Vorhes. Vern and Irene contributed roughly 302 acres of Floyd County farmland to capitalize the corporation. Vern and Irene were then the sole shareholders of Vorhes, Ltd. Over the years Vern and Irene began to gift various amounts of shares in equal amounts to their four children, Pete Vorhes, Bill Vorhes, Bernice Gill, and Jean Westendorf. At the time of Vern's death on February 13, 1984, Vern and Irene each owned 5758 shares of corporate stock and each of their four children held 2121 shares. Vern bequeathed a life estate in all of his stock to Irene and gave the remainder interest to his four children equally.

In late 1990 or early 1991, Pete negotiated an agreement with Vorhes, Ltd., to purchase ninety acres of corporate farmland in exchange for the surrender of all his stock in the corporation. At the time, Vorhes, Ltd. owned roughly 400 acres of farmland. Pete and Vorhes, Ltd. executed a real estate contract to confirm their agreement; however, by its terms the transaction was not to be consummated until Irene died.

On March 3, 2000, Bill and Vorhes, Ltd. executed a written lease agreement for 240 acres of farmland. The lease agreement called for Bill to pay cash rent of $80 per acre or a total of $19,200 per year.

In early 2010, Bernice began caring for Irene.[1] On February 25, 2010, Irene signed a durable power of attorney, naming Bernice as her attorney in fact.

A March 25, 2010 special meeting of shareholders was held and Bernice represented Irene as her power of attorney. The minutes of that meeting include the following:

> The next matter discussed was the ownership of the stock of Vorhes, Ltd. A Stock Transfer Record attached hereto, marked Exhibit "B," and by this reference mad[e] a part hereof, was given to each of the stockholders present. All reviewed the ownership and transfers as shown on the Stock Transfer Record. There was a general discussion concerning the gifts of stock that were made by Vern Vorhes and Irene Vorhes to their children. The stockholders present generally agreed that the ownership of the shares of stock are as represented on the stock transfer record. However, two separate issues were discussed by shareholders in much greater detail.

---

[1] Following an examination of Irene, a September 24, 2010 physician's note states: Severe, end-stage dementia. [Mini-Mental State Examination] MMSE 5/30. When done in 02/2010 MMSE was 25/30. Decline has been dramatic over the past several months. She is cared for by her daughter (Bernice) who[] is the durable power of attorney. She does not wish to pursue placement in a long-term care facility.

One of the issues discussed was the bankruptcy of Bill A. Vorhes and what that meant concerning the ownership of his shares of Vorhes, Ltd. Bill Vorhes was the owner of 2121 shares of stock beginning on September 9, 1981, according to the Stock Transfer Record. Bill Vorhes told the other shareholders he filed bankruptcy sometime in the mid-to-late 1980s. Some other shareholders questioned him on how he could still own stock in the company if he filed bankruptcy. Bill Vorhes stated he did not list the stock in his bankruptcy. Further, discussion occurred and Bill Vorhes was asked by the shareholders to explain this to them within sixty days of the date of this meeting.

The shareholders also discussed corporate loans, as well as the rental of the corporate land. Bill was noted as the tenant of much of the farmland. The minutes provide:

100 acre Meeks parcel—Divided in 2 parcels
It was determined by the shareholders that this parcel is divided between Pet-Mar, Inc. and Bill Vorhes with each farming approximately 50 acres. The discussion again was that Pet-Mar, Inc. and Bill Vorhes should pay cash rent for this property. At this time Bill Vorhes [said] to the other shareholders that he had an understanding with his mother, Irene Vorhes, that he would only have to pay rent if he raised a corn crop of 210 bushels per acre and then Vorhes, Ltd. would receive one-third of that value. Bill Vorhes did not believe he had ever had to pay rent based upon this formula.

148 acres
Bill Vorhes is the tenant of this property and explained to the other shareholders that this ground is contaminated and the subject of a lawsuit against Floyd County. No rent has been collected by Vorhes, Ltd. for this property.

56 acres—Slivers
Bill Vorhes is the tenant of this property. No rent has been collected by Vorhes, Ltd. for this property. All the property that is being farmed by Pet-Mar, Inc. or Bill Vorhes is to be leased with cash payments in 2010. As mentioned above, action concerning earlier years will be determined later.

A further discussion concerning the farm land was held concerning whether it should be leased to non-family members. It was determined that it was too late this year to lease the land to non-family members, but it would be considered for next year.

The minutes indicate a "second special meeting will probably be held sometime at least sixty days after this meeting" to continue the discussion and to "plan a strategy to make Vorhes, Ltd. a profitable business entity."

Another meeting was held in May 2010 at which the board of directors determined Bernice would become president of the corporation.

A July 27, 2010 meeting of the board of directors resulted in a recommendation to "cancel all previous land leases."

Minutes from a September 3, 2010 special meeting of the board of directors of the corporation indicate the corporation was having financial difficulties:

> Present were all three Directors, Bernice Gill, Pete Vorhes and Lynn Kingery, all of whom signed a Waiver of Notice.
> Attorney Ralph Smith summarized the issues facing the corporation arising from the apparent misappropriation of money/property from the corporation by its shareholders. CPA Larry Pump distributed exhibits to the Board of Directors illustrating the extent of the apparent misappropriation as divulged by the income tax returns and other records of the corporation. As a result of this misappropriation, a substantial mortgage debt has been incurred with First Security Bank & Trust Company which the corporation does not have sufficient funds to keep current, as no rent has been paid on corporation property in recent years.

A strategy was adopted to borrow money to satisfy the mortgage debt and rent the corporate land to produce revenue.

A September 4, 2010 family meeting was held at which Bill was present. There was discussion of the moneys owed by Bill to the corporation.

There are minutes from an undated meeting at which Jean Westendorf was appointed president. Bernice was not present and Irene's purported signature appears.

On December 1, 2010, a board of director's meeting was held, attended by Bernice, Pete, and Lynn Kingery. The board approved a lease for corporate land.

Irene died on December 11, 2010, at which time the remainder interest in the stock that Vern left to their four children ripened. In her will, Irene left all of her stock in Vorhes, Ltd. to Bernice, Jean, and Bill, share and share alike. The administration of Irene's estate is pending in Floyd County probate court and has not been completed, due in large part to the dispute between Bernice, Jean, and Bill regarding the value of the Vorhes, Ltd. stock that Irene owned at the time of her death.

A notice of an annual shareholder's meeting was dated January 17, 2011, and signed by Jean and Bill—"Being a majority of the shareholders of said corporation." Bernice did not attend. A vote on the board of directors was postponed.

In late February or early March 2011, Pete surrendered all of his stock to Vorhes, Ltd. and received a deed to ninety acres of farmland in satisfaction of his real estate contract with the corporation. Since then, Pete has held no interest in or ownership of Vorhes, Ltd. and has had no participation in the management or governance of the corporation.

On March 28, 2011, Bernice was sent a "notice of stockholders meeting" to be held on April 15, 2011, signed by Jean and Bill, to elect board members. Part of the notice provided,

> It [is] suggested that this meeting be attended by only the stockholders of Vorhes, LTD for the purpose of doing business, it is also requested that if any member insist[s] on being represented by

an attorney that they notify Jean Westendorf of this fact *5* days prior to April 15th, 2011, so that the other members may have the right of representation if they choose.

The meeting was apparently held on April 22, however. According to the minutes, Bernice attended via telephone conference call. Bill was elected as president; Jean, vice president; and Bernice, a board member.

On April 28, 2011, counsel for Bernice sent a letter to Bill and Jean, demanding that Vorhes, Ltd. take action to collect outstanding debts owed by Bill to the corporation. Bill and Jean then were the only other living shareholders in Vorhes, Ltd. and held themselves out to be the president and vice president, respectively, of the corporation. The letter advised Bill and Jean that if the corporation failed to act, Bernice intended to pursue a shareholder derivative action to preserve and protect the value of the corporation. Vorhes, Ltd. took no action.

A corporate meeting was held on May 9, 2011, for which extensive minutes were taken. According to the minutes:

> Discussion of past due rent followed. Bill reported to Steve Daniels [counsel for Bernice] after his question regarding a contract of land rental that he had a verbal agreement with the land owner, Irene Vorhes, that if he couldn't make money off of the land that the corporation would forego the rent. Steve Daniels requested that information be provided to him and his client regarding past due rent and monies related to some sort of CD that money was borrowed against to buy some grain, and all of the other issues that Larry Pump [accountant] is investigating. He then stated that if Larry Pump does his accounting work and reports to Bernice that all transactions are satisfactory; she has no problem with that. However, he asks that Larry Pump be allowed to do his job and then it be figured out what that number is that is owed or not owed. Steve then asked for confirmation that the corporation proceed with Larry Pump's investigation; agreed to by shareholders.
> . . . .

Other discussion: Steve commented that he would like to reemphasize his letter of April 28, 2011. Bill did not receive a copy of letter and Steve will ask Mr. Eide to send Bill a copy directly. Again, he is requesting an answer from the corporation if steps will be taken to collect money that he and his client believe are due and owing from Bill Vorhes or not because if answer is no, then he can start finding out another way to do this. Jean suggested that it be found out what is really owed and then take action. Confirmation of corporation's agreement to hire Larry Pump to continue his investigation . . . . Question directed to corporation as to what position the corporation is taking regarding Bill's debt. Reported by secretary Karen Powers that it was stated earlier in the meeting that more documentation was requested by shareholders before determination could be made. Jean suggested that someone familiar with the papers be present while Mr. Pump is working on his investigation. It was agreed upon by all shareholders that they will all be present when information gathered by Larry Pump is presented to the corporation and that it will be decided upon then as to how the corporation will proceed.

September 6, 2011 shareholder meeting minutes provide in part: "Discussion followed regarding monies owed to Vorhes, Ltd. It was decided that it is yet to be determined if any individuals or companies owe Vorhes, Ltd."

On September 7, 2011, Bernice[2] filed a petition against Bill Vorhes, and nominally Vorhes, Ltd., alleging a shareholder-derivative action against Bill seeking payment for unpaid farm rent and outstanding debts owed to the corporation. Bill filed an answer with four affirmative defenses,[3] none of which raised the statute of limitations or the requirements of Iowa Rule of Civil Procedure 1.279.

---

[2] In 2013, Lynn Kingery was appointed guardian and conservator of Bernice through a temporary involuntary guardianship and conservatorship after Bernice suffered a stroke.

[3] In an amended answer, filed September 10, 2012, without court order, Bill raises several additional affirmative defenses, including that the court lacked subject matter jurisdiction, and "[p]ursuant to statutory requirements, the plaintiff has not placed a proper and prior demand for remedial action upon the management of the corporation."

On October 25, 2011, Vorhes, Ltd. moved the court to appoint a panel under Iowa Code section 490.744(6) (2011).[4] On February 7, 2013, the district court found section 490.744(6) was applicable to evaluate the merits of the claims asserted. The court continued:

> James Goodman, the special executor in the estate of Irene V. Vorhes, issued his report on the value of the stock of Vorhes, Ltd. Mr. Goodman filed his report in the estate on December 17, 2012. After reviewing the report, it is clear to the court that the claims asserted by [Bernice] have merit and should be pursued for the benefit of the corporation. In the opinion of Mr. Goodman, Vorhes, Ltd. has failed to collect more than $851,000 in cash rent and other debts owed to it by defendant, Bill Vorhes. The court sees no reason to appoint a panel under [section] 490.744(6). Most, if not all, of the work to be done by such a panel would duplicate the investigation done by Mr. Goodman. Given the facts and observations noted by Mr. Goodman in his report, it seems highly unlikely that any panel operating in good faith would recommend dismissal of the pending action.

On April 7, 2014—more than two years after suit was filed—the corporation filed a motion to dismiss the action, asserting the corporation (1) had "not been the victim of a breach of fiduciary duty," (2) Gill could not sue in her individual capacity, (3) "Gill did not supply any affidavit to support her demand for

---

[4] Section 490.744 then provided, in part:
> 1. A derivative proceeding shall be dismissed by the court on motion by the corporation if one of the groups specified in subsection 2 or 6 has determined in good faith after conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the derivative proceeding is not in the best interests of the corporation. A corporation moving to dismiss on this basis shall submit in support of the motion a short and concise statement of the reasons for the determination.
> 2. [not applicable] . . .
> . . . .
> 6. The court may appoint a panel of one or more independent persons upon motion by the corporation to make a determination whether the maintenance of the derivative proceeding is in the best interest of the corporation. In such case, the plaintiff shall have the burden of proving that the requirements of subsection 1 have been met.

Subsection 6 was amended and renumbered as subsection 5 by 2013 Iowa Acts ch. 31, §§ 21, 82.

a shareholder derivative suit against Vorhes, Ltd" as required by Iowa Rule of Civil Procedure 1.279, and (4) Gill's request for attorney fees was no longer supported by Iowa Code section 490.746.

Trial was held April 8, 9, 10, 11, 14, and 15, 2014. On April 9, the following facts were included in a written stipulation filed by the parties:

1. Between September 2002 and November 2009 Vorhes, Ltd. loaned Bill Vorhes various sums of money at various points in time.

2. Of the sums loaned by Vorhes, Ltd. to Bill Vorhes between September 2002 and November 2009, $67,500 remains due and owing by Bill Vorhes to Vorhes, Ltd. at the time of trial.

3. Bill Vorhes acknowledges that the court may, but is not limited to, the remedy of entering a money judgment against him in favor of Vorhes, Ltd. for the sum of $67,500 and agrees to waive any right to any and all defenses to this portion of the claim brought on behalf of Vorhes, Ltd. by Bernice Gill, but does reserve the rights under section 490.746, including the right to argue that no attorney's fees or other expenses should be awarded to Bernice Gill based upon Iowa Code section 490.746.

4. Between September 2002 and September 2010, Vorhes, Ltd. borrowed various sums of money on behalf of Bill Vorhes for the purpose of purchasing and delivering corn to an ethanol plant on his behalf.

5. On or about September 7, 2010, Vorhes, Ltd. repaid the borrowed funds with interest to the First Security Bank & Trust of Charles City, Iowa.

6. The repayment to the First Security Bank & Trust on September 7, 2010, by Vorhes, Ltd. totaled $236,102.13, of which Bill Vorhes acknowledges that he is responsible to the corporation for 80% of that amount, or $188,881.70.

7. Bill Vorhes acknowledges that the court may, but is not limited to, the entry of judgment against him in favor of Vorhes, Ltd. for the sum of $188,881.70 and, agrees to waive any right to any and all defenses to this portion of the claim brought on behalf of Vorhes, Ltd. by Bernice Gill, but does reserve all rights under Iowa Code section 490.746 to argue that no attorney's fees or other expenses should be awarded to Bernice Gill based upon Iowa Code section 490.746.

8. This stipulation is given by Bill Vorhes to resolve disputed claims, but he acknowledges that Bernice Gill may use this Stipulation of the Parties for all purposes contemplated by the Iowa Code and the Iowa Rules of Civil Procedure.

9. Plaintiff Bernice Gill waives all other claims asserted against Bill Vorhes asserted in this lawsuit except as provided in paragraph 10, and in addition waives all other claims she has as shareholder of Vorhes, Ltd. against Bill Vorhes for conduct occurring on or before April 21, 2011, but she does reserve all rights as a shareholder to object to the repayment or reimbursement of any and all alleged expenses incurred by Bill Vorhes on behalf of Vorhes, Ltd. before April 21, 2011.

The parties then stipulated that the issues remaining for trial were the claim for non-payment of farm rent from March 3, 2000, and Vorhes' defenses asserted thereto; the claim for attorney's fees and expenses under Iowa Code section 490.746, as well as plaintiff's claim for the corporation to be reimbursed for attorney fees and/or expenses incurred or loaned to Bill Vorhes and/or Jean Westendorf to defend this lawsuit.

At trial, Bill Vorhes testified that in the eleven-year period that the lease agreement was in place he made only three payments: (1) a $5000 payment in November 2002, (2) a $2168.34 payment in January 2007; and (3) a $7183.64 payment in November 2009, totaling $14,351.98. He asserted Irene waived all other rent payments by handwritten notes. One note is undated and reads:

> To whom it may concern,
> We, the Ltd corporation, ha[ve] an agreement with the tenants for a target price of $80 an acre on 300 acres of tillable ground. The rent money is not always collected because it allows for disaster or poor crops due to weather.
> Sincerely,
> Vorhes Ltd.
> Irene Vorhes, President

Another handwritten note, dated April 21, 2000, reads:

> To whom it may concern,
> In regard to rent for land owned by Vorhes Ltd., we will forgo rent until his cash flow is adequate.
> Sincerely,
> Vorhes Ltd. by

Irene Vorhes, Pres.

The corporation filed a renewed motion to dismiss after trial, claiming Gill had failed to "meet the basic jurisdictional requirements necessary to bring a shareholder derivative lawsuit." On November 14, 2014, the district court denied the renewed motion to dismiss and concluded that to grant the motion would have exalted form over substance:

> The court specifically finds that Plaintiff satisfied the conditions imposed by section 490.742 before commencing this action. Steven Daniels, acting on behalf of Plaintiff, sent a letter to Bill Vorhes and Jean Westendorf on April 28, 2011, demanding that Vorhes, Ltd. take action to collect outstanding debts owed to the corporation. At the time the letter was sent, Mr. Vorhes and Ms. Westendorf were the only living persons (other than Plaintiff) who then owned stock in the corporation or held any corporate office or management position. The letter described with reasonable specificity what actions Plaintiff wanted the corporation to take and also gave clear notice that if these actions were not taken, Plaintiff intended to pursue any and all actions available to her "to preserve, protect and enhance the value of the corporation." Plaintiff did not commence this action until September 7, 2011, which was more than 90 days from the date of her demand on the corporation. Plaintiff satisfied the statutory prerequisites for bringing her shareholder derivative action.
>
> The court also finds that the petition filed by Plaintiff substantially complies with the pleading requirements contained in Rule 1.279. In the petition, Plaintiff specifically alleges and describes her efforts to have the directors, officers or other shareholders of Vorhes, Ltd., take the actions and enforce the rights that she is pursuing in this case on behalf of the corporation. Other than the fact that Plaintiff did not support her petition by affidavit, all the requirements of Rule 1.279 have been satisfied. The court is not aware of, and Vorhes, Ltd., has not cited, any Iowa case law holding that the affidavit requirement of Rule 1.279 is jurisdictional. In the absence of such precedent, the court will not dismiss this action on a motion that was first brought on the day of trial simply because Plaintiff did not attach an affidavit to her petition.
>
> It is important to note that this action had been pending over 30 months when Vorhes, Ltd., first made its motion to dismiss. During this time, the parties pursued discovery and counsel engaged in discussions regarding the issues raised by Plaintiff.

From the time Mr. Vorhes and Ms. Westendorf received the demand letter from counsel for Plaintiff up to the day of trial, Defendants knew or should have known what actions Plaintiff wanted the corporation to take and what legal rights of the corporation Plaintiff wanted it to enforce. The addition of a supporting affidavit to the petition of Plaintiff would have done nothing to aid Defendants in their preparation for the trial in this case or to further the purposes of Rule 1.279.

The court entered its ruling on April 6, 2015, making a specific finding Bill was not credible: "His demeanor on the witness stand and the general lack of consistency between the statements he made prior to the trial and the testimony he gave on the witness stand caused the court to be very skeptical of any assertions of fact made by Bill."

The district court concluded, "It is clear that Bernice had to pursue legal action to vindicate the rights of the corporation, as Bill consistently and categorically denied being indebted or legally obligated to Vorhes, Ltd. in any way right up to the start of the trial in this case."

The court found Bill liable to the corporation for unpaid loans and rent, writing:

> *Unpaid Loans Owed by Bill.* Bill has stipulated that he is legally indebted to Vorhes, Ltd. in the amount of $256,381.70 for corporate funds he borrowed or used for personal purposes between September 2002 and September 2010 but never repaid. The court will enter judgment accordingly against Bill and in favor of Vorhes, Ltd.
> *Unpaid Rent Owed by Bill.* It is undisputed that from May 1, 2000, through the end of the 2010 crop season, Bill had possession and use of 240 acres of farmland owned by Vorhes, Ltd. under a valid written lease with the corporation. It is also undisputed that the terms of the lease required Bill to pay Vorhes, Ltd. cash rent of $19,200 every year. The evidence showed Bill only paid the corporation $5000 in rent under the lease prior to the trial in this case. Bernice has asserted a claim against Bill on behalf of Vorhes, Ltd. for unpaid rent due and owing under the lease in the amount of $206,200. The court concludes that based on the failure

of Bill to perform his contractual obligations under the lease, Vorhes, Ltd. is entitled to judgment against him in the full amount asserted by Bernice.

Bill has raised various arguments in defense of the claim made against him for unpaid rent. The court rejects all of them. Bill maintains that Irene, acting as the president of Vorhes, Ltd. modified the lease to relieve him of any obligation to pay rent unless his farm income was sufficient to do so. The record does not support the modification of the lease alleged by Bill.

The court thus found Bill owed $462,581.70 to the corporation for unpaid loans and rent between the years of 2000 and 2011. In addition, the court found that Bernice properly exercised her rights as a shareholder under Iowa Code chapter 490 to prosecute the derivative action. The trial court concluded section 490.746, though amended, did not deprive the court of authority to award attorney fees. The court observed:

> The legislature amended the statute in 2013 and replaced the phrase "reasonable expenses, including attorney fees" with the word "expenses." Bill and Vorhes, Ltd. argue that this change in the statute prohibits the court from awarding any attorney fees against the corporation. The court disagrees. At the same time that the legislature made the change to section 490.746 noted above, it also added a provision in the Act to define the word "expenses" as meaning "reasonable expenses *of any kind* that are incurred in connection with a matter." Iowa Code § 490.140(16) (emphasis added). It is the opinion of the court that attorney fees are a kind of expense that might reasonably be incurred in a shareholder derivative action. Based on the broad definition of "expenses" found in section 490.140(16), the court concludes that it still has authority to award attorney fees against Vorhes, Ltd. in this action, notwithstanding the changes made to section 490.746.

In respect to the amount of the attorney fees the court concluded,

> The court finds that a reasonable fee for the legal work done by counsel for Bernice in connection with this shareholder derivative action is $90,000.00 and will direct the corporation to pay these fees.
> The written lease between Vorhes, Ltd. and Bill expressly provides for an award of attorney fees to the prevailing party in any lawsuit to enforce its terms. Here, Vorhes, Ltd. has prevailed on

the claim for unpaid rent brought in its stead by Bernice. In reviewing the invoices submitted by her law firm, the court finds that a reasonable fee for the legal work done by counsel for Bernice in connection with the claim she asserted against Bill for unpaid rent is $45,000.00. Judgment will be entered against Bill and in favor of Vorhes, Ltd. accordingly.

The Court will deny the request made by Bernice that it order Bill and Jean to reimburse Vorhes, Ltd. for any corporate funds used in defending this action. Jean is not a party to this action and the Court has no jurisdiction over her. There is nothing in the record to show how Mr. Banks and Bryan Witherwax allocated the $20,000.00 retainer at issue between Bill and Jean. Because the Court has no jurisdiction over Jean and has no way of knowing how much of the $20,000.00 retainer was used for her benefit, it not will attempt to order repayment of any part of the corporate funds used to pay the retainer.

Bill appeals the judgment against him, contending the shareholder-derivative action should have been dismissed due to the lack of a supporting affidavit, the complaining witness's cognitive abilities, the fact the debts were forgiven, and the statute of limitations had expired.

Vorhes, Ltd. challenges the authority of the court to award attorney fees to Bernice.

## II. Bill Vorhes' Appeal.

*A. Scope and Standard of Review.* "We review decisions in shareholders' derivative suits de novo, deferring especially to district court findings where the credibility of witnesses is a factor in the outcome." *Cookies Food Prods., Inc. v. Lakes Warehouse Distrib., Inc.*, 430 N.W.2d 447, 448 (Iowa 1988); *see also* Iowa Rs. App. P. 6.907; 6.904(3)(g).

*B. Discussion.* On appeal, Bill contends (1) Bernice "lacked the requisite cognitive capabilities to adequately represent" the corporation; (2) Bernice did not meet the "formalities required by Iowa law to litigate a shareholder derivative

action"; (3) the trial court erred in its evaluation of Irene's "wishes in regards to the terms of the 2000 lease agreement" and "her ability to unilaterally forgive debts under that agreement during her lifetime"; and (4) the statute of limitations barred this shareholder derivative action. We do not address the statute-of-limitations contention because it was not timely raised. *See Porter v. Good Eavespouting*, 505 N.W.2d 178, 182 (Iowa 1993) ("[T]he defendant did not raise the limitations defense in its pleadings. Because the limitations defense was not raised, the defendant waived it."); *see generally Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

*1. Adequate representation of corporation.* Iowa Code chapter 490, Part D authorizes a shareholder to maintain a derivative proceeding on behalf of a corporation. This is the codification of the derivative suit long recognized in Iowa.

> This proceeding in equity, commonly called a stockholder's suit or derivative action, is one brought by one or more stockholders of a corporation in their name as plaintiffs, but as representatives of the corporation, and for its benefit. They are plaintiffs in name only, and though the corporation is made a defendant, it is the real plaintiff in interest, and the beneficiary of any judgment recovered. Its basis is a damage done to the corporation by the real defendants and the refusal or failure of the corporation to redress the wrongdoing. It must be brought in equity.

*Des Moines Bank & Trust Co. v. George M. Bechtel & Co.*, 51 N.W.2d 174, 217 (Iowa 1952).

Bill acknowledges Bernice at all times pertinent was a shareholder with standing to bring a derivative suit. On appeal, however, he complains that because Bernice suffered a stroke before trial and was left unable to speak, her inability to speak "caused a lacking factual basis for her claims." He also complains he was deprived the ability to call her as a witness. We reject his contentions.

Bernice was the plaintiff "in name only." *Id.* The corporation was ably represented by counsel. *See Hawkeye Bank & Trust v. Baugh*, 463 N.W.2d 22, 25 (Iowa 1990) (noting a corporation is a legal entity separate from its shareholders and adopting "the general rule that a corporation may not represent itself through nonlawyer employees, officers, or shareholders"). Evidence of Bill's debts to the corporation—including Bill's stipulation—exists to support the claims raised in the petition and submitted at trial. Moreover, Bernice was never deposed or listed as a witness by either party, and no subpoena was issued to her. *See Jack v. P & A Farms, Ltd.*, 822 N.W.2d 511, 520 (Iowa 2012) ("A party is not denied a fair trial by the denial of the opportunity to cross-examine a witness who does not give any testimony."). We agree with the trial court that "Bernice has fairly and adequately represented the interests of the corporation in enforcing its rights. Her prosecution of this action has focused on the overall financial health of Vorhes, Ltd., as a separate legal entity."

***2. Formalities of derivative proceeding.*** Relying on *Berger v. General United Group, Inc.*, 268 N.W.2d 630 (Iowa 1978), Bill argues the district court should have dismissed this action for a failure to follow the procedural formalities of bringing a derivative action.

Bill did not file a motion to dismiss this action. Nor did his answer raise the issue. Rather, an attorney for the corporation filed a motion to dismiss on the day before trial, more than two years after the petition was filed.[5] In its appellate brief, the corporation does not pursue the claim. Bill never joined in the motion. In this context, we conclude Bill has not adequately raised or preserved the issue.[6] Moreover, the purpose of the rule is so courts do "not interfere in internal affairs of [a] private corporation until all intracorporate remedies have been exhausted." *Berger*, 268 N.W.2d at 635. Here, neither Bill nor the corporation contend a demand was not made, and the demand was futile in any event because Bill had assumed the position of president at the time of the demand and clearly was not intending on responding affirmatively to the demand. *See id.* at 636 (citing *First Nat'l Bank v. Fireproof S. B. Co.*, 202 N.W. 14, 18 (Iowa 1925) ("Where, however, the corporation is under the control of the party charged with the wrongful diversion, such a demand, since it would be unavailing, need not be made.")). Iowa case law does not impose "onerous restraints in derivative actions." *Id.* In sum, we believe the challenge to the lack of compliance with rule 1.279 has not been preserved; substantial compliance has been met; and if preserved in some fashion, is an untimely challenge to the pleadings.

In any event, Bill acknowledges Bernice had standing to bring this action. *See* Iowa Code § 490.741. The record includes the April 28, 2011 written

---

[5] This attorney was not prosecuting the claim but was allowed to appear and to cross-examine witnesses.

[6] It appears Bill raised the issue for the first time in his appellate brief. He fails to assert how he preserved error as required by Iowa Rule of Appellate Procedure 6.903(2)(g)(1) (requiring a brief include "[a] statement addressing how the issue was preserved for appellate review, with references to the places in the record where the issue was raised and decided").

demand to the corporation to collect the debts owed to it by Bill. *See id.* § 490.742(1). Bernice filed suit in September, more than ninety days after the demand letter. *See id.* § 490.742(2). As noted by the district court: "It is clear that Bernice had to pursue legal action to vindicate the rights of the corporation, as Bill consistently and categorically denied being indebted or legally obligated to Vorhes, Ltd. in any way right up to the start of the trial in this case."

We find no useful purpose would be served by dismissing this action more than two years after suit was filed and on the eve of trial based on a lack of a supporting affidavit "alleg[ing Bernice's] efforts to have the directors, trustees or other shareholders bring the action or enforce the right, or a sufficient reason for not making such effort." Iowa R. Civ. P. 1.279. Bill was fully aware of the contracts at issue, Bernice was pursuing the rights of the corporation to substantial sums of money to which it was entitled, and Bill can point to no prejudice.

*3. Lease.* Bill acknowledges he entered into a "valid written lease with the corporation from May 1, 2000, through the 2010 farming season" and that "[t]he original terms of the lease required [him] to pay the corporation cash rent in the amount of $19,000 annually." He also acknowledges he "paid the corporation $5000 in rent under the lease prior to the instigation of litigation." He asserts nonetheless that Irene as president of Vorhes, Ltd. relieved him of rent payments.

Upon our de novo review, we again adopt the findings of the trial court:

> In support of his position, Bill points to Exhibit Q and Exhibit R, two relatively short documents authored by his mother. The court finds that these two documents are unclear as to their

meaning or purpose. Neither Exhibit Q nor Exhibit R makes any specific reference to Bill or to the written lease agreement that these documents purportedly modify. Exhibit Q refers to an agreement involving 300 acres of land, which is 60 acres more than the written lease at issue. Exhibit R appears to be the fourth page of a multiple page document (as indicated by the circled "4" at the top of the page), but Bill did not provide any other pages from it. Neither of these documents is even directed to Bill, but rather to "whom it may concern" or "whom this concern(sic)." Based on the record before it, the court is unable to determine the real purpose of either Exhibit Q or Exhibit R. However, the court is certain that neither one of these documents was intended to accomplish a permanent modification of the written lease agreement between Bill and Vorhes, Ltd., or to waive the payment of all rent under the lease by Bill.

Two facts undermine the claim that Exhibit Q and Exhibit R are what Bill has characterized them to be. The first is that there are two documents which supposedly accomplish the same purpose. If Irene actually intended that either Exhibit Q or Exhibit R was to permanently relieve Bill from the obligation to pay rent imposed on him under the written lease, there would be no reason to sign another document to the same effect. The fact that Irene signed both Exhibit Q and Exhibit R indicates to the court that these documents had a different purpose than what Bill claims.

Secondly, the court finds it significant that Bill made no reference to either document until relatively late in this litigation. The issues of whether Bill owed delinquent rent to Vorhes, Ltd. and how much rent he owed were first raised by Bernice and her attorney at a meeting of all the shareholders on March 25, 2010, and subsequently discussed during another shareholder meeting on February 25, 2011. The letter that the attorney for Bernice sent to Bill and Jean on April 28, 2011, certainly put Bill on notice that Bernice believed he owed delinquent rent to the corporation. Even so, Bill never mentioned the existence of either Exhibit Q or Exhibit R or suggested that Vorhes, Ltd. had released him from any obligation to pay rent for the corporate land he had been farming. Two different attorneys filed answers for Bill in this action, the first on October 27, 2011, and the second on September 10, 2012. There is no reference to a written modification of the lease at issue or to a written waiver of rent in either answer. If Bill actually believed that either Exhibit Q or Exhibit R was truly what he now claims them to be, it seems to the court that Bill would have made specific reference to them much earlier in his communications with the other shareholders and would have explicitly identified these documents in one of his answers. As he did not, the court concludes that neither document should be given the effect that Bill urged at trial.

Regardless of whether Exhibit Q or Exhibit R was intended to accomplish a modification of the written lease at issue, any purported modification would be unenforceable for lack of consideration. New consideration must be given to support the modification of an existing contract. *Margeson v. Artis*, 776 N.W.2d 652, 657 (Iowa 2009). Consideration to support a contract modification can take the form of either a legal benefit to the party who proposes to modify the contract or a legal detriment to the other party. [*Id.*] at 655-57; *Meineke v. Nw. Bank & Trust Co.*, 756 N.W.2d 223, 227-28 (Iowa 2008). Neither form of consideration exists here. Vorhes, Ltd. gained nothing of benefit from the purported modification and there was no detriment to Bill. The purported modification of the lease did not impose any additional duties on Bill or require him to do anything that he was not already legally obligated to do. In the absence of consideration, any modification to the written lease supposedly shown by either Exhibit Q or Exhibit R is invalid and unenforceable.

We affirm the judgment entered against Bill Vorhes.

**III. Vorhes, Ltd.'s appeal.**

It its appeal, Vorhes, Ltd. contends the trial court lacked authority to include an award of attorney fees and lacked a necessary factual basis for the fees awarded.

*A. Authority to award attorney fees.* The corporation argues that because Iowa Code section 490.746 was amended in 2013, an award of attorney fees is no longer available.

Our goal in interpreting statutes is to determine legislative intent. *Iowa Individual Health Benefit Reins. Ass'n v. State Univ. of Iowa*, 876 N.W.2d 800, 804 (Iowa 2016). To determine legislative intent, we look to the language used, the purpose of the statute, the policies and remedies implicated, and the consequences resulting from different interpretations. *Id.* at 805. We assess the entire statute and its enactment to "give the statute its proper meaning in context." *Sanon v. City of Pella*, 865 N.W.2d 506, 511 (Iowa 2015).

We also consider, "'Although the title of a statute cannot limit the plain meaning of the text, it can be considered in determining legislative intent.'" *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004) (citation omitted). "A statute's title may be used only to resolve existing doubts or ambiguities as to the statutory meanings and not to create ambiguity where none existed." 1A Norman J. Singer & Shambie Singer, *Statutes and Statutory Construction* § 18:7, at 78–79 (7th ed. 2009).

The amended section 490.746 was part of "An Act Relating to Nonsubstantive Code Corrections and Including Effective Date Provisions." Thus, we begin with the understanding the amendments are intended to be nonsubstantive.

Prior to the amendment, Iowa courts had long held that a shareholder who acts to benefit the corporation is entitled to be reimbursed for necessary expenses:

> In 2 Spelling on Private Corporations, § 643, the author lays down the rule that "the owner of stock in a corporation who sues for himself and all other shareholders successfully, for a wrong done to the corporation, is entitled to be reimbursed his actual and necessary expenses and expenditures, including attorney's fees out of the corporate fund." In Cook on Stock & Stockholders, § 748, it is said that, in case the suit is successful, the complaining stockholder is entitled to have his costs paid by the corporation. . . . But no more than reasonable expenses, including attorney's fees, may be exacted. The right to the recovery of costs at all is contingent on success in the suit. If the action is successful, the plaintiffs may recover for, or have taxed, their attorney's fees; if unsuccessful, they may not. The contingency, however, is in the right to maintain the action, for unless sufficient grounds appear, and the corporation through its officers refuse to sue, there is no occasion for the stockholder to interpose for the protection of corporate interests. The expense in such a case is that of an intermeddler. It is only when he has been an instrument for the protection of corporate interests that he can legitimately claim his

expenses, and then only such reasonable expenses as the corporation must have incurred had it prosecuted the action in its own interest.

*Graham v. Dubuque Speciality Mach. Works*, 114 N.W. 619, 621-22 (Iowa 1908);

*see also State ex rel. Weede v. Bechtel*, 56 N.W.2d 173, 188 (Iowa 1952) ("[T]he

owner of stock . . . who sues for himself and all other shareholders successfully,

for a wrong done to the corporation, is entitled to be reimbursed his actual and

necessary expenses and expenditures, including attorney's fees out of the

corporate fund." (citation omitted)).

Section 490.746 was amended, effective January 1, 2014, as follows:

> On termination of the derivative proceeding, the court may do ~~either~~ <u>any</u> of the following:
> (1) Order the corporation to pay the plaintiff's ~~reasonable~~ expenses~~, including attorney fees~~ incurred in the proceeding, if it finds that the proceeding has resulted in a substantial benefit to the corporation.
> (2) Order the plaintiff to pay any defendant's ~~reasonable~~ expenses~~, including attorney fees~~ incurred in defending the proceeding, if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose.

2013 Iowa Acts ch. 31, §§ 22, 82.

We believe the removal of the court's authority to order the payment of

attorney fees would be a substantive change.

We note, too, that as part of the amendments to chapter 490, a new

definitional subsection was added to section 490.140. *See* 2013 Iowa Acts ch.

31, § 2 (codified at Iowa Code § 490.140(16) (2015)). Section 490.140(16)

provides that "'[e]xpenses' means *reasonable expenses of any kind* that are

incurred with a matter." (Emphasis added.) Reading sections 490.746 and

490.140(16) together,[7] we conclude the legislature intended to continue the court's authority to award reasonable attorney fees "if it finds that the proceeding has resulted in a substantial benefit to the corporation." In sum, the attorney fees were expenses both "incurred in the proceeding," and were expenses "of any kind"; and if the suit had been unsuccessful, the corporation could have recovered expenses "of any kind" "in defending the proceeding." Iowa Code §§ 490.746, .140(16).

**B. Reasonable expenses.** Where the trial court has the authority to award reasonable fees, we review the award of attorney fees for an abuse of discretion. *See Vaughan v. Must, Inc.*, 542 N.W.2d 533, 541 (Iowa 1996). "Because this judgment is equitable, the district court has substantial discretion." *Id.*

> In the ruling, the district court found

> that in fairness to Bernice and in recognition of the benefit resulting to the corporation from her efforts, Vorhes, Ltd. should be required to pay the attorney fees she has reasonably incurred in connection with this shareholder derivative action. Thanks to Bernice, Vorhes, Ltd. will be awarded a money judgment against Bill in the amount of $462,581.70, which is certainly a substantial benefit to the corporation. Bernice has submitted invoices from her law firm totaling $119,196.50 and proposes that the court direct Vorhes, Ltd. to pay this amount. However, not all of the services described in these invoices pertain to the investigation, commencement, and prosecution of this shareholder derivative action. Some of the services described in these invoices relate to legal advice and representation that was provided to Bernice in her individual capacity and not in her capacity as the plaintiff in this action. Some of the services strike the court to be duplicative and superfluous. The court will not require Vorhes, Ltd. to pay for these services. The court finds that a reasonable fee for the legal work done by counsel for Bernice in connection with this shareholder derivative

---

[7] *See De More v. Dieters*, 334 N.W.2d 734, 737 (Iowa 1983) ("[L]egislative intent is to be gleaned from the statute as a whole, not from a particular part only.").

> action is $90,000.00 and will direct the corporation to pay these fees.
>
> The written lease between Vorhes, Ltd. and Bill expressly provides for an award of attorney fees to the prevailing party in any lawsuit to enforce its terms.[8] Here, Vorhes, Ltd. has prevailed on the claim for unpaid rent brought in its stead by Bernice. In reviewing the invoices submitted by her law firm, the court finds that a reasonable fee for the legal work done by counsel for Bernice in connection with the claim she asserted against Bill for unpaid rent is $45,000.00. Judgment will be entered against Bill and in favor of Vorhes, Ltd. accordingly.

As has been observed by our supreme court, "The district court is an expert on the issue of reasonable attorney fees." *Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 24 (Iowa 2001). As such an expert, the district court had the benefit of observing the trial and the post-trial proceedings. The court was therefore "in an ideal position to judge the necessity of time and effort spent by counsel and the rationality of the relationship between the services rendered." *See id.*

The court admitted Bernice's submitted exhibit 56, identifying and itemizing the services rendered at the time of trial. Attached to Bernice's post-trial brief was an itemized billing statement reflecting additional services rendered to that juncture. The billing statements were sufficiently itemized that the district court was able to discern some of the services were unrelated to the derivative action. These facts are quite different than the facts in the cases relied upon by the corporation—*Bronner v. Randall*, No. 14-0154, 2015 WL 2089360, at *10 (Iowa Ct. App. May 6, 2015) ("[T]here was absolutely no evidentiary support for the attorney fee claim."), and *Mississippi Valley Broadcasting Inc. v Mitchell*, 503

---

[8] Paragraph 20 of the lease provides, "If either party files suit to enforce any of the terms of the Lease, the prevailing party shall be entitled to recover court costs and reasonable attorneys' fees."

N.W.2d 617, 620 (Iowa Ct. App. 1993) (where district court had noted that the claimant did not prove the fees were "usual and necessary" as required by section 91A.8 (1991) in filing only "a statement by counsel of the hours entered, a description of the work done, and affidavits regarding the regular hourly charges of the attorneys").

The district court did not abuse its discretion in its award. The corporation has benefited substantially by Bernice's suit. The trial court adjusted the fee request downward upon its consideration of the record. We affirm on the appeal by Vorhes, Ltd.

**AFFIRMED ON BOTH APPEALS.**